Argued and submitted February 29, affirmed April 18, reconsideration denied May 25, petition for review denied June 19, 1984 (297 Or 339)

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN RUEBEN MACE,
*Appellant.*

(10-82-09678; CA A28672)

681 P2d 140

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Roy Pulvers, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

### WARREN, J.

Defendant appeals his conviction for sexual abuse in the first degree, ORS 163.425(1)(a)(A), assigning error to the manner of his arrest, the admission of evidence of a statement made by the four-year-old victim to her mother and the imposition of costs. We affirm.

In November, 1982, defendant requested and received permission to stay for a few days at the home of his sister-in-law and her two daughters, ages three and four. On November 13, defendant was left babysitting for the two children while their mother was away shopping from noon until approximately 4:30 p.m. At trial, the mother described the following events involving her four-year-old daughter that occurred after she returned home:

> "I went to change [the child's] clothes to put on her new clothes that I had previously bought her that day and she started pulling at the crotch of her pants and she goes, 'Mommie, it hurts.'
>
> "Not two seconds later she had to go potty. She went in the bathroom.
>
> "She took down her pants and she put her hand on the toilet when she was going to the bathroom going, 'Mommie, mommie, it hurts,' and I walked in the bathroom.
>
> "I glanced down at her panties and there was blood on them. I asked her, I said, '* * * what happened? What's the matter?'
>
> "And she just told me, she says, 'Johnny's been playing with me, Mom.'
>
> "Q. Did she say where Johnny had been playing with her?
>
> "A. Yes. She said, 'Johnny's been playing with my puss.'
>
> "Q. Do you know from your experience with [the child] what area of her anatomy 'puss' refers to?
>
> "A. Her private area.
>
> "Q. Vaginal area or anal area?
>
> "A. Vaginal."

The victim was taken to the hospital, where the staff observed a slight tearing of the vaginal wall and redness and irritation

about the vaginal opening that was consistent with, among other possible causes, sexual abuse by digital manipulation.

The victim's mother returned to her home with an Oregon State Police detective. Defendant was not home when they arrived, but came in minutes later. The detective questioned defendant in a bedroom. After being advised of his *Miranda* rights, defendant admitted inserting his finger in the victim's vagina and was formally placed under arrest. Defendant waived his right to a jury trial. On stipulated facts, the judge found defendant guilty of sexual abuse in the first degree. The judge suspended imposition of sentence for five years, placed defendant on probation for a like period and, among several conditions of probation, ordered defendant to pay costs of $500.

In his first assignment of error, defendant claims that the court erred by denying his motion to suppress evidence seized after defendant's warrantless arrest in the home of his sister-in-law, where he was a guest. Defendant acknowledges that ORS 133.310[1] authorizes warrantless felony arrest on probable cause and concedes that the detective had probable cause for the arrest. In support of his motion to suppress, defendant argues that ORS 133.310 violates the warrant requirement of Article I, section 9, of the Oregon Constitition and that his confession to police after the arrest should be suppressed as a product of an illegal arrest.

The U.S. Supreme Court decided precisely this issue under the Fourth Amendment in *United States v. Watson,* 423 US 411, 96 S Ct 820, 46 L Ed 2d 598 (1976). The court held that a warrantless arrest, not in the defendant's home, based on probable cause and authorized by a statute substantially similar to ORS 133.310, does not violate the Fourth Amendment. Fully recognizing the principles of *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983), we hold that the rule is the same

---

[1] ORS 133.310 provides, in pertinent part:

"(1) A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed:

"(a) A felony, a Class A misdemeanor or an unclassified offense for which the maximum penalty allowed by law is equal to or greater than the maximum penalty allowed for a Class A misdemeanor, or a major traffic offense as defined in ORS 484.010(5); * * *"

under Article I, section 9, of the Oregon Constitution and that neither the statute nor defendant's arrest, admittedly within the provisions of ORS 133.310 violate the Oregon Constitution.

In his second assignment, defendant claims that the trial court erred by admitting evidence of the victim's statement in the mother's testimony set out above in this opinion.[2] The trial court found that

"the event occurred between three or four o'clock in the afternoon and that the mother returned * * * between four-thirty and five, and that [the victim's statements] followed practically right after the mother returned."

The court concluded that the statements were admissible as excited utterances made at the first opportunity for the victim to communicate and were triggered by discomfort and pain related to the incident in question. We agree.

Certain hearsay statements relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition fall within a generally recognized exception to the hearsay rule and are admissible. OEC 803(2). Defendant recognizes this exception, explained by the Supreme Court in *State v. Kendrick*, 239 Or 512, 515-16, 398 P2d 471 (1965), as follows:

"Statements known as spontaneous exlamations *[sic]* fall within a generally recognized exception to the rule. In order to qualify under this exception, the following have to exist: (1) there must be some occurrence startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must be before there has been time to contrive and misrepresent and while reflective powers are yet in abeyance; (3) the utterance must relate to the circumstances of the startling occurrence preceding it. (See § 1750, Wigmore on Evidence, 3rd ed.)"

Defendant claims that the victim's statements to her mother cannot be admitted as an excited utterance, because the statements were in answer to her mother's inquiry and not

---

[2] Defendant also claims error in admitting evidence of the victim's statements repeated by her mother to hospital personnel. The only indication of any such statements admitted into evidence is contained in a hospital record offered by defendant in its entirety. Defendant is in no position to claim error in the admission of his own evidence.

made closely enough in time to the alleged event. These are factors to be considered in judging the trustworthiness of the statements. *See State v. Hutchison,* 222 Or 533, 542, 353 P2d 1047 (1960).

In *State v. Wilson,* 20 Or App 553, 532 P2d 825 (1975), we allowed the admission of the statement of a 14-year-old victim, who had escaped and reported the crime to a passerby about an hour after the occurrence. We explained:

> "The determination of whether a statement is of an impulsive or unreflective nature requires consideration of several factors among which the lapse of time between the exciting event and the particular utterance is generally regarded as of primary significance. There is a judicial reluctance to characterize statements as 'spontaneous' as the length of time increases between the event and the utterance. Obviously, no inflexible rule gauged to that interval may be employed to determine whether any particular declaration was or was not the product of reflective thought. Rather, each case will depend upon an examination of the facts peculiar to it, and should be resolved by the exercise of a judicial discretion which takes into account factors such as the condition of the victim at the time the statement were given, whether the statement was made in response to an inquiry by some other person, whether the declaration was made at the first opportunity subsequent to the alleged occurrence, and the age or mentality of the victim, in addition to the time element. *See Zeller v. Dahl,* 262 Or 515, 499 P2d 1316 (1972); *Bosin v. Oak Lodge San. Dist.,* 251 Or 554, 447 P2d 285 (1968); Annotation, 19 ALR2d 579 (1951)." 20 Or App at 558-59.

The influence of the passage of time is important in order to judge whether the statements were made while the sway of the event dominated and before there had been time to reflect, contrive and misrepresent. *See State v. Kendrick, supra,* 239 Or at 516; *State v. Hutchison, supra.* In this case, there is no doubt that the event described would be traumatic to a four year old. The child was in pain, visibly upset and crying when she explained to her mother the cause of her pain. The allegation of sexual attack was made very shortly after her mother returned home. Less than two hours had elapsed between the event and the statement, and it was the first opportunity for the child to complain. There is no indication that she had had an opportunity, reason or ability to fabricate.

We recognize the difficulty inherent in determining the period of time adequate for reflective thought in a child not otherwise competent to testify, but when a four year old reports an alleged sexual attack within a short period of time to a trusted adult with no intervening opportunity for outside influence, we can infer that the influence of the event continued. Under these circumstances, the trial judge did not err in concluding that the victim's statements were a product of the distress of the event and the pain it caused and were admissible as excited utterances under OEC 803(2).[3]

Defendant also claims that admission of the evidence violates his rights under the federal and state Confrontation Clauses, because he was not able to cross-examine the child. The availability of cross-examination is not the sole criterion by which to test the admission of hearsay over a Confrontation Clause objection when the witness is unavailable. *Barber v. Page,* 390 US 719, 88 S Ct 1318, 20 L Ed 2d 255 (1968); *State v. Herrera,* 286 Or 349, 354-55, 594 P2d 823 (1979). In *United States v. Nick,* 604 F2d 1199, 1203 (9th Cir 1979), where the statements of a three-year-old boy to his mother about a sexual attack were admitted under FRE 803(2), which is identical to OEC 803(2), the court stated:

> "* * * In this context, the essential confrontation clause issue is whether the admissible hearsay, under all of the circumstances, has a very high degree of reliability and trustworthiness and there is a demonstrated need for the evidence. The availability of cross-examination is simply one of the means by which the quality of reliability is tested."

The requirement that the statement be made under the distress of the event provides the element of trustworthiness and reliability that supplies the foundation of this well-recognized exception to the hearsay rule. *State v. Kendrick, supra,* 239 Or at 516; *State v. Hutchison, supra,* 222 Or at 538. In addition, this evidence is important as "some other proof" that tends to establish that a crime has been committed,

---

[3] Alternatively, the state claims that this evidence was also admissible under the "catchall" exception to the hearsay prohibition contained in OEC 803(24). We need not discuss this argument, because we conclude that the evidence was properly received as an excited utterance. *See State v. Hollywood,* 67 Or App 546, 680 P2d 655 (1984).

which is essential under ORS 136.425(1)[4] to corroborate defendant's confession. *See State v. Lerch,* 296 Or 377, 677 P2d 678 (1984). Under these circumstances, we conclude that the admission of the hearsay assertion did not violate the confrontation rights of defendant.

■ Finally, defendant contends that the court erred in ordering him to repay $500 in costs over three and one-half years. The record shows that the court considered defendant's resources and determined that he was employable and able to repay the $500 over that period. The court did not abuse its discretion.

Affirmed.

---

[4] ORS 136.425(1) provides:

"A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against him when it was made under the influence of fear produced by threats; nor is a confession only sufficient to warrant his conviction without some other proof that the crime has been committed."