Submitted on record and briefs October 31, 1990, judgment vacated; remanded for further proceedings May 1, reconsideration denied August 14, petition for review allowed October 29, 1991 (312 Or 234)

## STATE OF OREGON,
*Respondent,*

*v.*

## JOHANNES JENSEN,
*Appellant.*

## (88-10-36812; CA A61487)

810 P2d 865

Sally L. Avera, Public Defender, and Diane L. Alessi, Deputy Public Defender, Salem, filed the brief for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Diane S. Lefkow, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals his convictions for assault in the first degree, ORS 163.185, and criminal mistreatment in the first degree. ORS 163.205. He assigns error to the trial court's refusal to excuse a potential juror for cause and its refusal to continue the trial until the three-year-old victim could be located. He also assigns error to the court's failure to sustain his objections to the testimony of a nurse concerning the child's description of how he was injured. We conclude that the state had the burden to produce the child for a competency hearing before the court could admit the child's out-of-court statements.

The child lived with his mother, brother and defendant, mother's boyfriend, whom the child called "Daddy." While mother and brother were at school, defendant was baby-sitting. Angered because the child had spilled cereal on himself, defendant filled the bathtub with hot water. He then forced the child to sit in the water, causing severe burns on his buttocks, groin, lower torso and feet. Mother had set the hot water heater at 163 degrees several months before. The child also received an abrasion on his forehead and cuts inside his mouth from being gagged. After he took the child out of the water, defendant went to a neighbor's apartment and called mother. She came home, and they took the child to a hospital, from where he was transported to the Oregon Burn Center. One of the nurses who treated the child at the burn center testified that each time that he was asked how he got hurt, the child responded, "Daddy dunked me." The nurse also testified:

> "I asked him where the water was and he said in the bathtub. And I asked him if he turned it on and was it running and he said no—the water was there."

The child was in the hospital for a month and is permanently scarred.

This is an appeal after defendant's second trial. In his first, which resulted in a mistrial, the court found the child incompetent to testify. On the basis of testimony presented at that trial, the child was made a ward of the court. Children's Services Division (CSD) then placed him in his great grandparents' care.

■     In his first assignment of error, defendant contends that a prospective juror named Holman should have been excused for cause. During *voir dire,* two prospective jurors were excused after telling the court that they could not be impartial. The court then asked if any other potential jurors would have trouble sitting on the case. Holman told the court that, because he had a 20-month-old child, he was uncomfortable with the case. Defendant requested that he be excused for cause. The court asked Holman more questions. He told the court that, despite his discomfort, he thought that he could consider the case objectively. The trial court did not excuse him for cause, and defendant exercised a peremptory challenge to excuse him.

We conclude that the trial court did not abuse its discretion by refusing defendant's request to excuse Holman for cause. The record contains sufficient evidence to support the court's determination that Holman could "try the case impartially and follow the trial court's instructions." *State v. Montez,* 309 Or 564, 594, 789 P2d 1352 (1990).

■     Defendant next assigns error to the trial court's refusal to exclude evidence of the victim's statements to a nurse at the burn center. The court admitted the statements as exceptions to the hearsay rule under OEC 803(4) for statements made for the purpose of medical diagnosis and treatment. The state argues that the statements were also admissible as excited utterances under OEC 803(2).[1] Because we conclude that the statements would be admissible as excited utterances, we do not address whether they were also admissible as statements made for medical diagnosis and treatment.

■     For hearsay to be admitted as an excited utterance under OEC 803(2),

"(1) there must be some occurrence startling enough to

---

[1] OEC 803 provides, in part:

"The following are not excluded by [OEC 802, the general rule against the admission of hearsay], even though the declarant is available as a witness:

"* * * * *

"(2) A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

produce nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must be before there has been time to contrive and misrepresent and while reflective powers are yet in abeyance; (3) the utterance must relate to the circumstances of the startling occurrence preceding it." *State v. Kendrick,* 239 Or 512, 515, 398 P2d 471 (1965).

The court must look at various factors, such as

" 'the condition of the victim at the time the statement was given, whether the statement was made in response to an inquiry by some other person, whether the declaration was made at the first opportunity subsequent to the alleged occurrence, and the age or mentality of the victim, in addition to the time element.' " *State v. Mace,* 67 Or App 753, 758, 681 P2d 140, *rev den* 297 Or 339 (1984) (*quoting State v. Wilson,* 20 Or App 553, 558, 532 P2d 825 (1975)).

That the statements are in response to questions goes to trustworthiness rather than admissibility. *State v. Mace, supra,* 67 Or App at 757-58.

In order to qualify as an excited utterance, a statement does not need to be made immediately after the occurrence. In *State v. Moen,* 309 Or 45, 60, 786 P2d 111 (1990), the declarant was agitated, anxious, nervous, tearful and crying while at a regular doctor's appointment. She then told the doctor about threats and abusive behavior by her son-in-law that had occurred some time before. The court held:

" 'Continuing emotional * * * shock * * * or unabated fright * * * and other factors may prolong the impact of a stressful event, making it proper to resort to Rule 803(2) despite long lapses of time.' " 309 Or at 60 (*quoting* 4 Louisell & Mueller, *Federal Evidence* 506, § 439 (1980)).

The child was severely burned. He was taken to the emergency room, then transported to the burn center. Even though 90 minutes had passed, he had had little opportunity to communicate about the incident to any non-involved person. Considering his pain and the severity of his injuries, it was unlikely that the child would have contrived the statements. They qualify as excited utterances.

Defendant contends, however, that, because the declarant was not shown to be unavailable, the statements were not admissible. Under OEC 803(2), excited utterances

are admissible, whether or not the declarant is available as a witness. However, the Confrontation Clauses of Article I, section 11, of the Oregon Constitution and the Sixth Amendment require that a declarant be produced or shown to be unavailable before hearsay evidence of this nature can be admitted over a proper objection in a criminal trial.[2] *State v. Stevens,* 311 Or 119, 140, 806 P2d 92 (1991). In *State v. Campbell,* 299 Or 633, 651, 705 P2d 694 (1985), the Supreme Court adopted the reasoning of the United States Supreme Court, noting that it had held that admission of out-of-court statements of a witness who does not testify at trial satisfies a defendant's right to confrontation *only if* the declarant's out-of-court statements have "adequate indicia of reliability" *and* the declarant is unavailable. *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980).

As discussed above, the hearsay statements came under the exception for excited utterances, which is firmly rooted and satisfies the requirement of adequate indicia of reliability. *State v. Moen, supra,* 309 Or at 65; *State v. Kendrick, supra,* 239 Or at 515. The child, however, was not shown to be unavailable. The state had the burden to prove unavailability before it introduced the child's out-of-court statements. It failed to do so. As stated in *Ohio v. Roberts, supra:* "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." 448 US at 74. Here, the state did not attempt to locate the child before trial; instead it began its efforts only in response to defendant's demands at trial. It was then unable to produce him.

A witnesses' unavailability may be established by a showing that the witness is incompetent. However, that was not done here. Even though the child had been declared incompetent to testify at an earlier trial, the state was required to produce him for a competency decision at the second trial.

"Because there is so much variance among children, we believe only the trial judge can make a ruling on competency. We hold, therefore, that before any out-of-court declaration

---

[2] The unavailability requirement of the Confrontation Clause also applies to the hearsay exception for statements made for medical diagnosis and treatment. OEC 803(4).

of any available living witness may be offered against a defendant in a criminal trial, the witness must be produced and declared incompetent by the court * * *." *State v. Campbell, supra,* 299 Or at 652.

Because it is possible that the child would have been declared competent to testify, we vacate the judgment and remand for a determination of competency. If the child is found to have been incompetent, and thus unavailable, his excited utterances were properly admitted under OEC 803(2), and the judgment shall be reinstated. If the child is found to have been competent, and thus available, defendant was denied his right to confront witnesses against him. Defendant would then be entitled to a new trial.

■ In his final assignment of error, defendant contends that his constitutional rights to confrontation and compulsory process were violated when the trial court did not continue the trial until the child could be located. Defendant argues that the child was a key witness and that the child's testimony would have supported his contention that the burning was an accident. However, even assuming that defendant is correct that a continuance should have been granted, the error is harmless. If, on remand, the child is found to have been competent, defendant will be entitled to a new trial, and the court's failure to grant the continuance is a moot issue. Defendant was not harmed if the child is found to have been incompetent, because he would have been unavailable as a witness in any event.

Judgment vacated; remanded for proceedings not inconsistent with this opinion.