Argued and submitted January 13, decision of Court of Appeals affirmed in part and reversed in part, judgment of circuit court affirmed July 30, reconsideration denied September 29, 1992

STATE OF OREGON,
*Respondent on Review,*

*v.*

JOHANNES JENSEN,
*Petitioner on Review.*

(CC 88-10-36812; CA A61487; SC S38280)

837 P2d 525

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for petitioner on review. With her on the petition was Sally L. Avera, Public Defender, Salem.

Diane S. Lefkow, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson, Chief Justice, and Peterson, Van Hoomissen, Fadeley, and Graber, Justices.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant was convicted of first-degree assault, ORS 163.185, and first-degree criminal mistreatment, ORS 163.205. On appeal, he assigned as error the trial court's failure to sustain his objection to the testimony of a nurse who had treated the three-year-old victim, about the child's description of how he was injured. Defendant argued that the testimony was inadmissible hearsay. He also argued, for the first time on appeal, that the Confrontation Clauses of the Oregon[1] and United States Constitutions[2] mandate that the evidence should not have been admitted without a preliminary finding that the child, who did not testify at trial, was unavailable. The Court of Appeals rejected defendant's hearsay argument, but vacated his convictions and remanded the case to determine whether the child was unavailable at the time of trial. *State v. Jensen*, 107 Or App 35, 38-41, 810 P2d 865 (1991). We affirm the Court of Appeals' holding that the evidence about the child's statements was properly admitted. However, because defendant did not raise any constitutional confrontation issue at trial, we reverse the Court of Appeals' decision to remand this case for further proceedings. Accordingly, we reinstate defendant's convictions.

Defendant initially was charged with first-degree assault and two counts of first-degree criminal mistreatment. All the charges against defendant stemmed from an incident in which he caused serious injuries to his girlfriend's three-year-old son. We take the facts from the Court of Appeals' opinion:

"The child lived with his mother, brother and defendant, mother's boyfriend, whom the child called 'Daddy.' While mother and brother were at school, defendant was baby-

---

[1] Article I, section 11, of the Oregon Constitution, provides in part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face[.]"

[2] The Sixth Amendment to the Constitution of the United States provides in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

The Sixth Amendment right to confrontation is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 US 400, 403, 85 S Ct 1065, 13 L Ed 2d 923 (1965).

sitting. Angered because the child had spilled cereal on himself, defendant filled the bathtub with hot water. He then forced the child to sit in the water, causing severe burns on his buttocks, groin, lower torso and feet. Mother had set the hot water heater on 163 degrees several months before. The child also received an abrasion on his forehead and cuts inside his mouth from being gagged. After he took the child out of the water, defendant went to a neighbor's apartment and called mother. She came home, and they took the child to a hospital, from where he was transported to the Oregon Burn Center. One of the nurses who treated the child at the burn center[, Jay Caulk,] testified that each time that [the child] was asked how he got hurt, the child responded, 'Daddy dunked me.' [Caulk] also testified:

> " 'I asked him where the water was and he said in the bathtub. And I asked him if he turned it on and was it running and he said no — the water was there.'

"The child was in the hospital for a month and is permanently scarred." *State v. Jensen, supra*, 107 Or App at 37.

Defendant has had two trials in this case. This appeal is from the second trial. In the first trial, the jury found him not guilty of one count of criminal mistreatment and was unable to reach a verdict on the remaining two charges. The trial court discharged the jury and set the case for a new trial. The child was present at the first trial; the court, however, found the child incompetent to testify. On the basis of the record at the first trial, the child was made a ward of the court and was placed in the legal custody of the Children's Services Division (CSD), which, in turn, had placed him in the care of his great-grandparents before the start of the second trial.

The second trial began two weeks later. Defendant informed the court that he intended to call the child as a witness and asked the court to order the state to make the child available for a second competency hearing. Defendant did not serve CSD with a subpoena to produce the child until the trial court advised defendant that it was not the "state's burden to provide you with your witnesses" and suggested that he serve CSD. Throughout the second trial, defendant, the prosecutor, and CSD tried, without success, to locate the child, who, apparently, was traveling with his custodians at the time.

At the second trial, Nurse Caulk testified about the child's above-quoted statements concerning the cause of his injuries. Defendant objected, arguing only that the evidence was inadmissible hearsay. The state offered the evidence under OEC 803(4) (statements made for the purposes of medical diagnosis or treatment).[3] The trial court ruled that, although the testimony was hearsay, it nonetheless was admissible under OEC 803(4). The jury thereafter found defendant guilty of first-degree assault and first-degree criminal mistreatment.

On appeal, defendant assigned error to the trial court's admission of Caulk's testimony about the child's statements to him. As he had at trial, he argued that the evidence was inadmissible hearsay. He also argued, for the first time on appeal, that evidence of the child's statements should not have been admitted without a preliminary finding by the trial court that the child was unavailable to testify. As support for the latter argument, he relied on the Confrontation Clauses of the state and federal constitutions.

The Court of Appeals concluded that the evidence was admissible under OEC 803(2),[4] the excited utterance exception to the hearsay rule.[5] *State v. Jensen, supra,* 107 Or

---

[3] OEC 803(4) provides:

"The following are not excluded by OEC 802, even though the declarant is available as a witness:

"* * * * *

"(4) Statements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause of [sic: or] external source thereof insofar as reasonably pertinent to diagnosis or treatment."

[4] OEC 803(2) provides:

"The following are not excluded by OEC 802, even though the declarant is available as a witness:

"* * * * *

"(2) A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

[5] In *State v. Carlson,* 311 Or 201, 215-19, 808 P2d 1002 (1991), this court stated that under OEC 803(2) the three requirements to the excited utterance exception are: (1) a startling event or condition must have occurred; (2) the statement must have been made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement must relate to the startling event or condition. *Id.* at 215. The admissibility of a hearsay statement under OEC 803(2) is to be resolved by the trial judge, who must determine whether the proponent of the

App at 38. The court did not address whether the evidence also was admissible under OEC 803(4) (statements made for purposes of diagnosis or treatment). The court held, however, that, for purposes of satisfying defendant's confrontation rights under the state and federal constitutions, the state had failed to show that the child was unavailable. *Id.* at 40-41. Accordingly, the court vacated defendant's convictions and remanded the case to the trial court to determine whether the child was "unavailable" at the time of the second trial. *Id.* at 41. The court instructed that if the child was found to have been available, then defendant would be entitled to a new trial; if the child was found to have been unavailable, then defendant's convictions would be reinstated. *Ibid.* Defendant petitioned for review, seeking a new trial.

On review, defendant renews his evidentiary objections to the admission of Caulk's testimony. He also argues that, even if the Court of Appeals was correct in holding that Caulk's testimony about the child's statements was admissible under OEC 803(2), the constitutional error identified by the Court of Appeals requires a remand for a new trial, rather than for a hearing on the unavailability of the child.

Before addressing any of defendant's constitutional arguments, we must determine first whether the evidence was properly admitted under OEC 803. *Stelts v. State of Oregon*, 299 Or 252, 257, 701 P2d 1047 (1985) (this court ordinarily considers questions under state statutes before reaching state or federal constitutional questions).

■ We agree with defendant that the challenged statements are hearsay, because they were offered to prove the truth of the matter asserted. *See* OEC 801(3) (" 'Hearsay' is a statement * * * offered in evidence to prove the truth of the matter asserted"). Defendant also is correct that, generally, hearsay is not admissible at trial. *See* OEC 802 ("Hearsay is not admissible except as provided in OEC 801 to 806 or as otherwise provided by law"). We conclude, however, that Caulk's testimony about the child's statements to him was

---

evidence has established that the three requirements to the excited utterance exception have been met. *Id.* at 216. In this case, the trial judge made *no* findings under OEC 803(2) because the state offered the evidence only under OEC 803(4); the judge decided the question under OEC 803(4).

admissible for the reason stated by the trial court, *i.e.*, that it was admissible under OEC 803(4).

In *State v. Moen*, 309 Or 45, 55, 786 P2d 111 (1990), this court set out three requirements that must be met before a hearsay statement is admissible under OEC 803(4):

"(a) The statement must be 'made for the purposes of medical diagnosis or treatment';

"(b) The statement must describe or relate 'medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof';

"(c) The statement must be 'reasonably pertinent to diagnosis or treatment.' "

In this case, the challenged hearsay satisfied those criteria.[6]

First, the child's statements were made for the purposes of medical diagnosis or treatment. At trial, Caulk explained why it was important to know who caused the child's injury and whether the child was exposed to running water or standing water:

"[PROSECUTOR]: Why is it important to get a history from the patient?

"[CAULK]: In dealing with burn injuries you have to know what the cause of the injury was, how long they were exposed to that, the length of time that they were exposed, the agent that they were dealing with because that is what we have to deal with before reassessment. We have to establish the time of the injury, what they were burned with, assess as best we can the depth of the injury at that point in time so we can figure fluid calculations and then put into place our mode of treatment.

"Q: In coming up with and fashioning appropriate treatment program in [a] case of this nature is it important to know whether or not the injuries resulted from child abuse?

"A: It's important * * * to know if it was an intentional injury or unintentional injury has an intrical [*sic*] part because we're looking also at treatment for immediate response as well as the long term follow-up. And then if it is a

---

[6] For a discussion of the rationale for the OEC 803(4) exception, see *State v. Moen*, 309 Or 45, 55-56, 786 P2d 111 (1990).

questionable injury then we might need to do further examination in regards to X-rays and those types of things."

Caulk explained further that, in determining the duration of the child's stay at the hospital, it was important to know if a potential for future abuse existed:

"Q:   Would it also have an impact on how soon a patient was released from the Burn Center?

"A:   Yes. Depending on how well the wounds are progressing. If there is to a point where there is a strong solid family support and the wounds are clearing up well that we might be able to do an out patient and follow the patient that way as opposed to keeping him in the hospital. Yes, that has a definite key."

Caulk also explained why it was important for him to know whether the child had been placed in a bathtub that had already been filled with water or whether he had been placed in a bathtub that had been in the process of being filled:

"[PROSECUTOR]:   * * * [A]s part of getting the history of, the medical history behind a particular injury or several injuries, is it important to know as much as you can about the details of how those injuries were inflicted regarding the physical details and the circumstances and the situation exactly as it was when injuries were inflicted, does that assist in your treatment?

"A:   Yes because it gives us an idea of what to look for in the long term treatment. A close example being freeflowing water will give you one type of an injury as it hits one part of the skin and trails down. Along with that you're gong to have extension from more movement and you're going to see a different type of pattern and you're not going to have a circumferential injury or one that's all the way around parts of the body so that when the edema occurs you won't have the same problems with swelling.

"A burn that results — or an injury that results by an extremity or any part of the body being submerged, immersed, whatever word you want to use, into water will give you a circumferential injury so that you need to know and investigate the injury all the way around to see if it is equal all the way around because if that's the case then the body's response during the time you're going to have a third space shift which is the body's response to try to repair it so as that extremity swells then you have to be very concerned with distal circulation.

"If my arm were burned all the way around up high I would be very concerned then about circulation to the hand because as the body swells it has potential to cut off circulation to the lower extremity so you have to be aware of that. So it's important to know how the injury occurred, what you're looking for in regards to length of exposure, potential death because a burn may take four or forty-eight hours to declare itself in the actual death. If you know the agent or what caused the injury, you can have a better idea of guesstimating at the point of admission what you're going to be dealing with in regards to full thickness injuries or partial thickness injuries. So the history in regards to how it occurred, when it occurred, what the agent or the mechanism was is indeed very important.

"* * * * *

"[THE COURT]: Now, when you asked the question, 'Was there already water in the bathtub?' what was the purpose of asking that question?

"* * * * *

"[CAULK]: To one, validate where he was and two, to get an idea of how long he would have had to have been exposed at that point to get that type of configuration that we had.

"* * * * *

"[THE COURT]: And do you need to know that information that the water was already in the tub or not to determine the cause of this burn and is it important for you to know the cause of the burn?

"[CAULK]: To evaluate the cause of the burn and know what caused it, yes, it is important in my opinion."

Caulk also testified that he told the child why he needed to know the information that he sought:

"[PROSECUTOR]: * * * [D]id you make contact with [the child] at the Burn Center?

"[CAULK]: Yes, I did.

"* * * * *

"Q: Did you let [the child] know who you were?

"A: Yes and I told him my name was Jay and that I was going to be one of the nurses helping to take care of him and explained to him then what we were going to do, trying to make it a little easier."

The child's statements to Caulk concerned the very reason why the child had been admitted for emergency care; they related directly to the physical — if not psychological — trauma resulting from his having been immersed in scalding water by his "daddy." The child's statements were made in direct response to questions by Caulk, which were asked in the course of attempting to calm the child and to obtain a medical history for purposes of medical diagnosis and treatment. Caulk used the information that he obtained from the child in determining the course of treatment that would best suit the child's needs. On this record, we conclude that the trial court properly could have found that the child's statements to Caulk were made for the purposes of medical diagnosis or treatment and, therefore, were admissible under OEC 803(4).

Second, the subject matter of the child's statements was proper. In order to satisfy this requirement, the child's statements must describe "the inception or general character of the cause [or] external source" of the injuries. The child's statements at issue here unquestionably meet that standard.

Third, the child's statements were reasonably pertinent to diagnosis or treatment. The child's statements here enabled Caulk to diagnose the cause of the injury and to provide proper treatment. *See State v. Moen, supra,* 309 Or at 55-59 (victim's statements to physician about defendant's threats related cause of her depression, and physician used information first to diagnose, and then to treat, victim). In prescribing a course of treatment for the child, Caulk considered the child's exposure to the scalding water, the home environment, and whether the person responsible for causing the burn lived in the child's home.[7] The information provided by the child during the evaluation enabled Caulk to make a diagnosis and to provide proper treatment.

Similar information has been held to satisfy this requirement in other cases. In *State v. Moen, supra,* 309 Or at 58-59, this court detailed the leading federal case on this subject:

"In interpreting an identical evidentiary rule, FRE 803(4), the leading federal decision is consistent with our

---

[7] Defendant was the only person at home with the child at the relevant time.

analysis and conclusion. In *United States v. Renville*, 779 F2d 430 (8th Cir 1985), an 11-year-old child was sexually abused by her stepfather. The defendant claimed that a doctor should not have been permitted to testify to statements of the victim, made during an examination, that identified the defendant as her abuser. He argued that FRE 803(4) did 'not encompass statements of fault or identity made to medical personnel.' 779 F2d at 435-36. While acknowledging that such statements relating to identity ordinarily are not admissible, the court determined that where such statements were relevant to the physician's diagnosis or treatment, FRE 803(4) authorized their admission. Because the victim's statements were relevant for those purposes, the court held that the admission was proper."

This court, 309 Or at 58-59, then quoted the *Renville* court's analysis with approval.

" 'The crucial question under the rule is whether the out-of-court statement of the declarant was "reasonably pertinent" to diagnosis or treatment. In *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980), *cert. denied* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), this court set forth a two-part test for the admissibility of hearsay statements under rule 803(4): first, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis. *Id.* at 84. *See also Roberts v. Hollocher*, 664 F.2d 200, 204 (8th Cir. 1981). The test reflects the twin policy justifications advanced to support the rule. First, it is assumed that a patient has a strong motive to speak truthfully and accurately because the treatment or diagnosis will depend in part upon the information conveyed. The declarant's motive thus provides a sufficient guarantee of trustworthiness to permit an exception to the hearsay rule. *Iron Shell*, 633 F.2d at 84. Second, we have recognized that "a fact reliable enough to serve as the basis for diagnosis is also reliable enough to escape hearsay proscription." *Id.*

" '* * * * *

" '* * * We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of rule 803(4) that it

should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment.

" '* * * * *

" '* * * Information that the abuser is a member of the household is therefore "reasonably pertinent" to a course of treatment which includes removing the child from the home.' 779 F2d at 436-38 (first emphasis in original; second emphasis added)."

We conclude that the trial court did not err in holding that Caulk's testimony about the statements made to him by the child was admissible under OEC 803(4).

■    We turn now to defendant's confrontation argument under the state and federal constitutions. As a threshold matter, we question whether we should even reach this argument. We conclude that we should not.

ORAP 5.45(2) provides:

"No matter assigned as error will be considered on appeal unless it was preserved in the lower court and assigned as error in the party's opening brief; provided that the appellate court may consider errors of law apparent on the face of the record."

*See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991) ("Generally, before an appellate court may address whether a trial court committed an error in any of the particulars of the trial of a case, the adversely affected party must have preserved the alleged error in the trial court"); *State v. Hickmann*, 273 Or 358, 360, 540 P2d 1406 (1975) (same); *see also State v. King*, 307 Or 332, 338, 768 P2d 391 (1989) (alleged constitutional error raised for the first time on appeal will not be considered).

Defendant made no state or federal confrontation objection at *either* of his trials.[8] He made that objection for the first time on appeal.

---

[8] We note, however, that in *White v. Illinois*, ___ US ___, 112 S Ct 736, 116 L Ed 2d 848 (1992), the Supreme Court of the United States held that the Confrontation Clause of the Sixth Amendment does not require that the prosecution must either produce the declarant at trial or the trial court must find that the declarant is unavailable before a trial court admits testimony under the "spontaneous declaration" and "medical examination" exceptions to the hearsay rule.

The Court of Appeals did not find that this case presented any constitutional error of law "apparent on the face of the record." Neither do we. We conclude that the Court of Appeals erred in reaching defendant's confrontation argument. *See Ailes v. Portland Meadows, Inc., supra,* 312 Or at 384 (Court of Appeals erred in reaching unpreserved error); *State v. Hickmann, supra,* 273 Or at 360 (same). We, therefore, vacate that portion of the Court of Appeals' decision which vacated the trial court's judgment and remanded the case for a hearing on the question of the child's availability.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.