# STATE OF OREGON,
*Respondent,*

*v.*

# HAROLD JEFFERSON STOOKEY,
*Appellant.*

## (CR91072; CA A72760)

850 P2d 1167

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem. Appellant filed his supplemental opening brief *pro se*.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Defendant appeals from a conviction of murder. ORS 163.115. The issues are whether the murder victim's fiance should have been excluded from the courtroom before he testified; whether the trial court erred in denying defendant's motion for a new trial; and whether the court imposed an unauthorized sentence.

On December 12, 1990, McMinnville police officer Sawyer visited defendant, who was living in a trailer parked on forest land in Yamhill County, near the Flying M Ranch. The following day, defendant removed the trailer from the site. In January, 1991, Sawyer returned to the area and, while there, smelled a foul odor and found a place where something had been buried. Sawyer thought that the odor might have been caused by the burial of chemicals used to manufacture drugs, so he took a sample of the soil. An analysis of the sample was shown to Detective Henry, who determined that it did not contain drug-manufacturing chemicals. Henry and Sawyer went to the site and unearthed the body of a woman who was later identified as June Cross of Tacoma, Washington. A medical examiner determined that Cross had been killed by ligature strangulation, caused by a rope that was still around her neck. Some shovels were found near the grave, which was 50 yards from the site that had been occupied by defendant's trailer. Defendant identified the shovels as belonging to him. During the execution of a search warrant, a rope was found in defendant's trailer. A criminalist testified that the rope taken from Cross' neck and the rope found in defendant's trailer had, at one time, been part of the same piece of rope. Various pieces of identification and personal items, including a prescription bottle bearing the victim's name, were found near the body. At trial, the state produced evidence that defendant had a relationship with Cross, that he had purchased the trailer but had registered it in Cross' name because he had recently declared bankruptcy, and that Cross had subsequently returned to Tacoma to live with Nield, her fiance.

At trial, defendant moved to exclude all witnesses from the courtroom. The state opposed the motion as it applied to Nield. After informing the court that Nield was not present, but would be arriving later to testify, the state

described Nield as "the man who the victim was living with at the time she was killed,"[1] and submitted that he "may fall [under] the term 'victim,' someone who was psychologically affected by the crime." The trial court accepted the state's position and granted defendant's motion except as to Nield. Defendant assigns error to that ruling.

■ OEC 615 provides:

"At the request of a party the court may order witnesses excluded until the time of final argument, and it may make the order of its own motion. *This rule does not authorize exclusion of* * * * (4) *the victim in a criminal case.*" (Emphasis supplied.)

ORS 131.007 supplies the relevant definition of "victim." It provides, in part:

"As used in [OEC 615] * * *, except as otherwise specifically provided or unless the context requires otherwise, *'victim' means the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime and includes, in the case of a homicide, a member of the immediate family of the decedent* * * *." (Emphasis supplied.)

Given that the murder victim's fiance was not a "member of the immediate family of the decedent," the question is whether he is a "victim" within the meaning of OEC 615. The only basis on which the court could have determined that Nield was a "victim" was the state's representation that Nield had been living with the victim before she was killed. The bare assertion of their living arrangement, without more, does not indicate that Nield suffered the type of harm to which the statute is addressed. Because the trial court did not have adequate grounds for determining that Nield was a "victim," it erred in allowing him to remain in the courtroom.

■ The decisive issue is whether the trial court's error was prejudicial to defendant. Because of the likelihood that a witness will be influenced, either consciously or unconsciously, by hearing the testimony of others, and because of the difficulty of showing actual influence, we "assume prejudice unless the record affirmatively reflects the contrary." *State v. Bishop*, 7 Or App 558, 565, 492 P2d 509 (1972). In

---

[1] At trial, Nield testified that he was engaged to June Cross.

*Bishop*, the defendant was prejudiced because the testimony of the non-excluded witnesses was cumulative and corroborative, and therefore strengthened the state's case. In *State v. Dickenson*, 9 Or App 357, 497 P2d 374 (1972), the non-sequestered witnesses offered corroborative and cumulative testimony, but, because the defendant's testimony did not differ substantially from those witnesses' testimony, we held that the record evidenced a *lack* of prejudice to the defendant. *See also State v. Cetto*, 66 Or App 337, 340, 674 P2d 66, *rev den* 296 Or 712 (1984). In *State v. Roberts*, 47 Or App 323, 326, 614 P2d 139 (1980), we found no prejudice where the witness' testimony was limited to a matter that was unrelated to the matters about which prior witnesses had testified.[2]

In this case, when the judge ruled that Nield could be present in the courtroom during the trial, Nield had not yet arrived. The record does not show whether Nield entered the courtroom in time to hear any of the witnesses who testified before him. However, even assuming that he was present during the testimony of the nine witnesses who took the stand between the time that the court ruled on defendant's motion to exclude witnesses and the time that Nield testified, the record affirmatively shows that defendant was not prejudiced thereby. The witnesses who testified at the relevant time included a forensic pathologist, a detective, an investigating officer, two witnesses for the defense (called out of order), a criminalist, a probation officer, a co-worker of the victim and the victim's work supervisor. Both the co-worker and the supervisor testified that, near the beginning of December, 1990, Cross had taken a few days off work to buy a pickup and to see her children in Oregon, but that she had not returned.

Nield then took the stand. He identified himself as Cross' fiance, described her appearance, explained that she had taken the bus to Oregon on December 7, 1990, and recounted the clothes that she was wearing on that day, the luggage that she took with her and some of the contents of

---

[2] *Roberts* illustrates a circumstance that was contemplated by the court in *State v. Bishop, supra*:

"The best example of a record that would establish no possible prejudice is one in which the witnesses all testified to totally unrelated events." 7 Or App at 565.

that luggage. He also testified that the woman pictured in the autopsy photographs was June Cross. The only cumulative testimony offered by Nield related to the fact that Cross had travelled to Oregon in early December — a fact that was not at issue at trial. The remainder of Nield's testimony was unrelated to the testimony provided by the prior witnesses. Nonetheless, defendant argues that Nield's testimony was prejudicial because Nield was the only witness who positively identified the body as that of Judy Cross. That argument fails because the identity of the victim was conceded. In closing argument, defense counsel remarked, "That was June Cross, and I think they proved that. I'll be honest enough to stand here and tell you that I'm not contesting that was anybody else." The trial court's erroneous decision to allow Nield to be present in the courtroom was harmless.

Defendant also assigns error to the denial of his motion for a new trial based on newly discovered evidence. After the jury returned a guilty verdict but before sentencing, defendant offered evidence that, he contends, could not have been discovered in time for trial but that was relevant to the identity of the murderer. The court concluded that the new evidence probably would not change the result of the trial and denied defendant's motion.

At a hearing on his motion for a new trial, defendant presented the testimony of an inmate, Phillip Bixler, who recounted statements allegedly made to him by fellow inmate Steve Cox. The parties stipulated that, if brought to court, Cox would "claim the Fifth Amendment" and refuse to testify. Bixler testified that, while incarcerated, Bixler met Cox, who claimed that he had a girlfriend with keys to a trailer in the mountains near the Flying M Ranch, that he (Cox) had visited her at the trailer, that he uses rope in his business and that he owned a pickup that was for sale. Cox also commented on his desire to dispose of some bloody clothing. He did not name June Cross and did not say that he had killed anyone.

Newberg police detective Summers testified that he had been investigating a series of homicides in which the victims had died by ligature strangulation. He stated that Cox was a suspect in those homicides and that, had he known of the June Cross homicide, he probably would have listed Cox as a suspect in that case as well. However, he acknowledged

that he did not have any evidence linking Cox to the murder of Cross. Summers also testified that a second, unnamed cellmate of Cox' told a detective that Cox had said that he (Cox) and defendant had worked together in the death of June Cross. Cox allegedly told the unnamed cellmate that Cox held Cross down while defendant raped and strangled her. Finally, Summers testified that Cox's girlfriend told him that Cox had told her that he (Cox) fabricated the story about his involvement in the case so that defendant could gain a new trial.

We reject defendant's argument that this newly discovered evidence entitles him to a new trial because it "show[s] that probably someone other than defendant killed the victim." Even if all of the proferred testimony was admitted at a new trial, it would not eliminate or cast doubt on any of the evidence against defendant. If anything, it would merely raise the question of whether defendant committed the more aggravated crime of rape and strangulation, in conjunction with Cox. The trial court did not abuse its discretion in denying defendant's motion for a new trial. *State v. Disorbo*, 54 Or App 877, 636 P2d 986 (1981).

■ Defendant's final contention is that the court erred in sentencing him under both the felony sentencing guidelines and the murder statute. The court imposed a 210 month sentence under the guidelines and a sentence of life imprisonment under ORS 163.115(3)(a). Defendant challenges only the life imprisonment portion of his sentence. He is correct. *State v. Morgan*, 116 Or App 338, 842 P2d 406, *rev allowed* 315 Or 442 (1993); *State v. Bellek*, 114 Or App 17, 834 P2d 458, *rev allowed* 315 Or 442 (1993). Accordingly, we remand for resentencing.

Conviction affirmed; remanded for resentencing.