Argued and submitted December 18, 1992, affirmed November 3, 1993, reconsideration denied March 23, petition for review denied May 10, 1994
(319 Or 81)

# STATE OF OREGON,
*Respondent,*

*v.*

# EUGENE IRVING BOOTH,
*Appellant.*

(902819; CA A69846)

862 P2d 518

Jenny Cooke argued the cause and filed the brief for appellant.

Michael C. Livingston, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DEITS, J.

**DEITS, J.**

Defendant was convicted of three counts of sexual abuse in the first degree. ORS 163.427. On appeal, he assigns as error the trial court's admission of hearsay statements made by the three-year-old child to a treating physician, under OEC 803(4), and statements made by child to third parties, pursuant to OEC 803(18a)(b). He also assigns as error the trial court's denial of his motion for a new trial based on newly discovered evidence. We affirm.

In December, 1989, while child was staying overnight with her maternal grandparents, her grandmother was awakened by child's sobbing. Grandmother attempted to comfort her, but according to grandmother, child kept saying that "daddy hurt me."[1] Grandmother asked her where she was hurt. Child motioned across her body with her hand. Grandmother then said "your stomach?" Child said "no." Grandmother said "your vagina?" Child said "yes."[2] Grandmother put child back to bed. The next day, she called child's mother. Child spoke with her parents. She told her mother that she wanted to stay with grandmother. After the telephone conversation, child spontaneously told her grandmother that: "Daddy put his finger in my vagina." Grandmother called mother again and told her what child had said. Mother reported the incident to the Children's Services Division (CSD). Child was then examined by Dr. Sewell. The examination revealed no physical evidence of abuse. From December, 1989, until April, 1990, grandmother did not talk to child about defendant touching her.

In May of 1990, after just arriving at her grandmother's house, child spontaneously said: "Grandma, my vagina hurts." Grandmother told child that she had some powder that would make her feel better. Grandmother testified that she

---

[1] Although defendant is not child's natural father, she refers to him as "daddy." He is married to child's mother and is the father of mother's son, who is two years old.

[2] Child's mother testified that she had taught her daughter the proper terminology for that part of her body.

"pulled her little panties down. And her anus was red, just beet red, unnaturally red. And certain parts of her vaginal area were red also."

Grandmother asked child what had happened to her, and she responded: "Daddy put his finger in my vagina." Child was indicating her anus with her fingers. According to grandmother, child said that it happened when her mom went to work in the morning, when she took a bath, and she has awakened in the truck when her daddy had his finger in her vagina. Grandmother contacted CSD, and CSD referred child to Emanual Hospital's Child Abuse Response and Evaluation Services (C.A.R.E.S.) unit.

On May 7, 1990, mother and grandmother took child to the C.A.R.E.S. unit where Dr. Keltner, a specialist in the treatment of child sexual abuse, examined child. Keltner described child as very cooperative and pleasant, and characterized her speech as "exceedingly clear for a three-year-old." Keltner performed a complete physical examination of child, including a genital examination using a colposcope. She found that child's hymen was "striking in its size." It measured 1.3 centimeters in height by 8 millimeters in width. It was 13 times as long and 8 times as wide as it had been in December, 1989, as documented in a medical report. Keltner also described other abnormalities that she discovered during her examination of child, including "a small adhesion" where the hymen itself was essentially glued or scarred to the wall of the sulcus.

Keltner testified that it is important to talk with the child before making a diagnosis or recommending a treatment plan. She said that it is also important for her to know the identity of the abuser in order to recommend a treatment plan. Keltner said that she began asking child questions while she was still undressed and laying on the exam table. She said that she touched child's vagina with her gloved finger and asked her if anyone had touched her in that area. Child told her that her daddy, Eugene, had touched her there before. Keltner asked her how many times this had happened and she said twice. Keltner asked her what she was touched with and child held up her hand and moved her fingers. Keltner asked if anyone else had touched her or hurt her vagina and she said no. Keltner asked the same questions regarding child's rectal

area. Child again responded that her daddy had touched her there with his fingers. Keltner asked her if it felt "good or bad" when her father touched her, and child spontaneously said "it hurt." Keltner asked child what "we could do so daddy wouldn't touch her anymore?" Child said that "if she just kept her clothes always on that would work."

■ Defendant assigns error to the trial court's admission under OEC 803(4) of out-of-court statements made by child to Keltner. OEC 803(4) establishes a hearsay exception for out-of-court statements made for purposes of medical diagnosis or treatment. The rule provides in pertinent part:

"The following are not excluded by [OEC 802, the general rule against the admission of hearsay], even though the declarant is available as a witness:

"* * * * *

"(4)   Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof insofar as reasonably pertinent to diagnosis or treatment."

A statement is admissible under OEC 803(4) if it is a statement made for the purposes of medical diagnosis or treatment, describes or relates "medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof," and is reasonably pertinent to medical diagnosis or treatment. *State v. Moen*, 309 Or 45, 55, 786 P2d 111 (1990). The trial court determines, in the first instance, whether a preponderance of the evidence supports a finding that a statement meets all three requirements under OEC 803(4). OEC 104(1). *State v. Barkley*, 315 Or 420, 427, 846 P2d 390 (1993). If there is evidence in the record, accepting reasonable inferences and credibility determinations that the trial court may have made, from which the trial court could have found by a preponderance of the evidence that child's statements were made for the purposes of medical diagnosis or treatment, we will affirm the ruling. *See State v. Carlson*, 311 Or 201, 214, 808 P2d 1002 (1991).

Defendant, relying on *State v. Vosika*, 83 Or App 298, 309, 731 P2d 449, *mod* 85 Or App 148, 735 P2d 1273 (1987),

argues that the trial court erred in admitting child's statements because she was too young to understand that she needed to be truthful for the doctor to make a diagnosis and recommend appropriate treatment. According to defendant, child was too young to be motivated by a desire to get proper medical care and, therefore, her statements are not within the ambit of OEC 803(4).

We did not hold in *Vosika* that, as a matter of law, a three-year-old child is too young to understand that a doctor would rely on what the child said to determine how to help the child. As has been explained in later decisions, the determination of what the child understood must be based on the facts in each case. *State v. Jensen*, 313 Or 587, 837 P2d 525 (1992); *State v. Alvarez*, 110 Or App 230, 822 P2d 1207 (1991), *rev den* 314 Or 176 (1992); *State v. Logan*, 105 Or App 556, 806 P2d 137, *rev dismissed* 312 Or 16 (1991); *State v. Newby*, 97 Or App 598, 777 P2d 994, *rev den* 308 Or 660 (1989). In *State v. Jensen, supra*, the court determined from the surrounding circumstances that a three-year-old child made statements to an emergency room nurse for purposes of medical diagnosis or treatment.

On this record, we conclude that it is reasonable to infer that child understood that she was undergoing a medical examination and that her answers to the doctor's specific questions were a part of the examination. Child underwent a complete physical examination, including a genital examination. While she was still on the examination table, partially undressed, Keltner began asking her questions. Child's statements were in direct response to those questions. Her responses were appropriate and establish that she understood what she was being asked. Keltner used her gloved fingers to touch the specific areas of child's body as she questioned her, ensuring that child knew exactly what area of the body they were discussing. This must also have impressed upon child that the questions were a *part of* the examination. Under these circumstances, we conclude that the trial court could properly have found, by a preponderance of the evidence, that child's statements were made for purposes of medical diagnosis or treatment. *See also State v. Jensen, supra*; *State v. Alvarez, supra*.

Additionally, child's statements were related to her medical history or the cause or source of her pain. Further, Keltner testified that she relied on the statements in her diagnosis and treatment of child. Accordingly, the trial court did not err in admitting child's statements to Keltner, because they met all three of the requirements of OEC 803(4).

■       Defendant also argues that admission of the hearsay statements violated his right to confrontation under the state and federal constitutions.[3] However, child's statements to Keltner were properly admitted under OEC 803(4). OEC 803(4) is a firmly rooted exception to the hearsay rule and, as such, satisfies defendant's right to confrontation. *State v. Moen, supra*, 309 Or at 63.

Defendant next assigns as error the trial court's admission of child's statements to third parties under OEC 803(18a)(b).[4] He first argues that admission of the hearsay

---

[3] The Sixth Amendment to the United States Constitution, made applicable to the states under the Fourteenth Amendment, provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"

Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face[.]"

[4] At the time of defendant's trial, OEC 803(18a)(b) provided, in part:

"A statement made by a child victim who is under 10 years of age, which statement describes an act of sexual conduct performed with or on the child by another, is not excluded by [OEC 802, the general rule against the admission of hearsay] if the statement is offered as evidence in a criminal trial * * * *and if the child either testifies at the proceeding and is subject to cross examination or is unavailable as a witness and if the proponent of admissibility establishes to the satisfaction of the court outside the presence of the jury, if any, that the time, content and circumstances of the statement provide substantial indicia of reliability*. However, when the child is unavailable as a witness, the statement may be admitted in evidence only if there is *corroborative evidence of the act of sexual conduct and of the defendant's participation in the conduct*. * * * In determining whether a statement possesses substantial indicia of reliability under this paragraph, the court may consider, but is not limited to, the following factors:

"(A)   The child's personal knowledge of the event;

"(B)   The age and maturity of the child;

"(C)   Certainty that the statement was made, including the credibility of the person testifying about the statement and any motive the person may have to falsify or distort the statement;

"(D)   Any apparent motive the child may have to falsify or distort the event, including bias, corruption or coercion;

statements under OEC 803(18a)(b) violated his state and federal constitutional rights of confrontation, because OEC 803(18a)(b) is not a firmly rooted exception to the hearsay rule and the statements do not otherwise have particularized guarantees of trustworthiness. We agree with defendant that OEC 803(18a)(b) is not a firmly rooted exception to the hearsay rule. However, we have held that, if a statement meets the requirements of OEC 803(18a)(b), it has sufficient particularized guarantees of trustworthiness to satisfy the confrontation clauses of the state and federal constitutions. *State v. Renly*, 111 Or App 453, 462, 827 P2d 1345 (1992).

■ Defendant next argues that the statements are inadmissible under OEC 803(18a)(b), because the statements do not meet the requirements of the rule that the "time, content and circumstances provide substantial indicia of reliability" and that, when the child is unavailable as a witness, the defendant's participation in sexual conduct with the child must be corroborated. The state argues that the statements had sufficient indicia of reliability and that defendant's admissions, in combination with the physical evidence of sexual abuse, sufficiently corroborate defendant's participation in sexual conduct with child to admit her statements under OEC 803(18a)(b).

Whether hearsay statements meet the admissibility requirements of OEC 803(18a)(b) is a preliminary question of fact for the trial court under OEC 104(1). *State v. Renly,*

---

"(E) The timing of the child's statement;

"(F) Whether more than one person heard the statement;

"(G) Whether the child was suffering pain or distress when making the statement;

"(H) The nature and duration of any alleged abuse;

"(I) Whether the child's young age makes it unlikely that the child fabricated a statement that represents a graphic, detailed account beyond the child's knowledge and experience;

"(J) Whether the statement has internal consistency or coherence and uses terminology appropriate to the child's age;

"(K) Whether the statement is spontaneous or directly responsive to questions;

"(L) Whether the statement was elicited by leading questions; and

"(M) Whether extrinsic evidence exists to show the accused's opportunity to commit the act to which the child's statement refers." (Emphasis supplied.)

OEC 803(18a)(b) was amended in 1991. Or Laws 1991, ch 391, § 1.

*supra*, 111 Or App at 468 n 12; *see also State v. Carlson, supra*. Here, after a competency hearing, child was found to be incompetent to testify at trial. Under those circumstances, to admit child's statements under OEC 803(18a)(b), the trial court must first determine if the hearsay statements have sufficient indicia of reliability. If the statements are found to be reliable, the trial court must determine if there is corroborative evidence of sexual conduct and of defendant's participation in the conduct. *State v. Renly, supra*, 111 Or App at 463-64. OEC 803(18a)(b) provides a non-exclusive list of relevant factors a trial court should consider in determining whether the statements have sufficient indicia of reliability.

A review of those factors here supports the trial court's finding that child's statements had sufficient indicia of reliability to meet the first criterion under OEC 803(18a)(b). The content of child's statements supports a finding that she had personal knowledge of the events she described. Her statements depicted in graphic detail events of which a child of her age would not normally be aware. She spontaneously told several persons that what her father did to her "hurt" and that "it pinched." She told her grandmother that her father put his fingers in her vagina when her mother went to work, when she took a bath, and sometimes in the truck she woke up and her father had his fingers in her vagina.

We also agree with the trial court that child's age and apparent lack of motive weigh in favor of the truthfulness of the statements. As the trial court explained:

> "The Court was particularly impressed with the age of the child, the lack of motive, that she loves her father, that she would like to live with him, that there is no motive to make this statement, that the child's young age makes it unlikely that she fabricated this statement based on the details given."

Five independent witnesses, including child's mother, who admitted that she still loves defendant, child's grandmother, her aunt, Detective Corson, and Keltner, heard and testified as to her statements. With the exception of grandmother, defendant offered no evidence to impeach the credibility of those witnesses. According to those witnesses, many of

child's statements were spontaneous and they were consistent. On at least one occasion, child was experiencing pain and distress when she spontaneously said that her daddy had hurt her by putting his fingers in her vagina. Grandmother testified that child's anus and vagina were "beet red." Additionally, we have already determined that child's statements to Keltner were made for purposes of medical diagnosis and treatment, which is a firmly rooted exception to the hearsay rule. On the basis of this record, we conclude that the trial court properly found that child's statements contained sufficient indicia of reliability to be admissible under OEC 803(18a)(b).

■   We also agree with the trial court's conclusion that there was sufficient corroboration of sexual conduct and defendant's participation in the conduct to satisfy the second requirement under OEC 803(18a)(b) when, as here, the child is unavailable to testify. Keltner's examination of her showed a substantial change in the size of her hymen occurring within a short period of time. Keltner testified that her physical examination of child revealed findings consistent with the type of sexual abuse depicted by child. The evidence established that defendant had access to child during the relevant time period. Additionally, defendant initially denied any contact with child's vaginal area, other than for purposes of normal hygiene, and he denied ever inserting his fingers into her vagina. However, later, he admitted that he had put his fingers "inside of the outer lips of [her] vagina" to remove either a hair, a piece of dirt, or some other foreign particle. He also acknowledged that he may have touched her vaginal area while playing "supergirl" with child, or while tickling her. Finally, he told Officer Garcia that he may have touched her vagina with his fingers during a "blackout," although he said he has never experienced a "blackout." That was sufficient corroboration. *See State ex rel Juv. Dept. v. Hill,* 116 Or App 379, 841 P2d 2 (1992). The trial court did not err in admitting child's statements made to third parties under OEC 803(18a)(b).

■   Defendant next assigns as error the trial court's admission of child's statement to her grandmother and her aunt that: "Mommie said I can't talk about my daddy."

Defendant argues that the statement was inadmissible hearsay. The state argues that the statement was not hearsay, because it was not offered to prove the truth of the statement—that her mother told her not to talk about daddy—but as circumstantial evidence of child's state of mind at the competency hearing—that she believed that her mother did not want her to talk about her daddy. We agree that the statement was not hearsay and was relevant to explain child's "recantation" at the competency hearing, which defendant introduced into evidence. The statement is not hearsay because it is irrelevant whether the statement "Mommie said I can't talk about my daddy" is true. What is significant is that child made the statement. The trial court did not err in admitting child's statement as circumstantial evidence of her state of mind at the competency hearing. OEC 801(3).

Finally, defendant assigns as error the trial court's denial of his motion for a new trial on the basis of newly discovered evidence. To justify a new trial, newly discovered evidence must have been discovered since trial and could not have been discovered earlier with due diligence, must be such as would probably have affected the outcome, must be material to an issue and not be merely cumulative or offered solely to impeach former evidence. *State v. Sullens*, 120 Or App 15, 852 P2d 270 (1993). We review the trial court's denial of defendant's motion for a new trial for abuse of discretion, *State v. Stookey*, 119 Or App 487, 493, 850 P2d 1167 (1993), and find none.

Defendant argues that, after he was convicted, child made false allegations of sexual abuse against her foster father. Defendant argues that this evidence impeaches the credibility of child's statements and may have affected the trial court's decision to admit her hearsay statements under OEC 803(18a)(b). Additionally, defendant argues that the fact that child's accusations against her foster father were also first revealed to her grandmother supports the position that he took at trial that grandmother had coached child. We agree with the trial court that defendant failed to substantiate his claim that child made false allegations of sexual abuse against her foster father. We also agree with the trial court that the jury in defendant's trial was presented with evidence

impeaching the grandmother's testimony and child's statements and that it concluded that grandmother and child were credible. On this record, we cannot say that the "newly discovered evidence" probably would have affected the verdict against defendant. The trial court did not abuse its discretion in denying defendant's motion for a new trial.

Affirmed.