Argued and submitted June 28, reversed and remanded for new trial
September 13, 1995

STATE OF OREGON,
*Respondent,*

*v.*

ARTHUR EDWARD HIGGINS,
*Appellant.*

(92C20855, 92C21457; CA A82564 (Control), A82565)

902 P2d 612

James N. Varner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Ann F. Kelley, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Katherine H. Waldo, Assistant Attorney General.

Before Riggs, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

This appeal involves two cases consolidated for purposes of trial and appeal. In CA A82564, defendant appeals convictions for three counts of sodomy in the first degree, ORS 163.405, and two counts of sexual abuse in the first degree, ORS 163.427, involving two victims, J. and M. In CA A82565, defendant appeals convictions for two counts of sexual abuse in the first degree, ORS 163.427, involving victim J.R. We reverse.

In February 1992, Officer Stoelk began an investigation regarding allegations of abuse occurring at defendant's residence. At that time, defendant shared his home with Barbara W.; her two sons, J., age 7, and M., age 8; and her daughter. Barbara's fiance, Russell, also lived at the house with his 10-year-old son J.R. In April 1992, Stoelk contacted J. at J.'s school and interviewed him privately in a counselor's office. During the interview, and with the use of anatomically correct drawings, J. conveyed graphic descriptions of how defendant had sexually abused him. After his interview with J., Stoelk met with M., who also told Stoelk how defendant had sexually abused and sodomized him.

Later, Stoelk interviewed defendant at the police station. Throughout the interview, defendant maintained that he had no sexual contact with either J. or M.[1] In October 1992, Stoelk also interviewed J.R., who told Stoelk that defendant had sexually abused him. Ultimately, defendant was arrested and charged with offenses involving J., M. and J.R., to which he pled not guilty.

Before the trial, the state filed a notice pursuant to OEC 803(18a)(b)[2] indicating its intent to rely at trial on the

---

[1] According to Stoelk, defendant said that he had "beat the hell out of them" and "that's why they don't like me." Defendant testified, "This is not the language I used with Detective Stoelk. I do not — I do not deny it, but this is not my customary language. I said that I hit them and that I spanked them and that on this one occasion I spanked them severely."

[2] OEC 803(18a)(b) provides, in part:

"A statement made by a child victim, which statement concerns an act of sexual conduct performed with or on the child by another, is not excluded by [OEC 802] if the child either testifies at the proceeding and is subject to cross-examination or is under 12 years of age and is unavailable as a witness. However, when a child under 12 years of age is unavailable as a witness, the statement may

hearsay statements J.R., M. and J. made to Stoelk. The trial court conducted a hearing to determine the competency and availability of the three boys as witnesses. At the hearing, M. and J. testified under oath that no sexual abuse had occurred. Instead, they said that they had lied to Stoelk. J.R. testified that defendant had sexually abused him.

The prosecutor offered testimony under OEC 803(18a)(b) about what the boys had told Stoelk, arguing that the change in the boys' statements resulted from the improper influence of Barbara, Russell and defendant. The boys indicated that everyone, including defendant, intended to celebrate at "IHOP" after the trial was over. The state also presented evidence that defendant had met with and talked to Barbara and the boys notwithstanding a court order prohibiting him from having contact with them. In summing up her position, the prosecutor told the trial court, "Based on the things that I have told you here, my representations about what has happened with these kids, I don't believe that they are available, Your Honor, to testify."[3] The trial court ruled

---

be admitted in evidence only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability, and in a criminal trial that there is corroborative evidence of the act of sexual conduct and of the alleged perpetrator's opportunity to participate in the conduct and that the statement possesses indicia of reliability as is constitutionally required to be admitted. No statement may be admitted under this paragraph unless the proponent of the statement makes known to the adverse party the proponent's intention to offer the statement and the particulars of the statement no later than 15 days before trial, except for good cause shown. *For purposes of this paragraph, in addition to those situations described in [OEC 804], the child shall be considered 'unavailable' if the child has a substantial lack of memory of the subject matter or the statement, is presently incompetent to testify, is unable to communicate about the sexual conduct because of fear or other similar reason or is substantially likely, as established by expert testimony, to suffer lasting severe emotional trauma from testifying.*" (Emphasis supplied.)

[3] In a colloquy with the trial court, the prosecutor had explained:

"On Monday, the 25th, when [J.] came in to see me for the first time — and Your Honor, I've known these children since the spring of '92 — he was very evasive with me, very uncomfortable, very — just short of belligerent, wouldn't look at me, wouldn't talk to me, started saying things like 'I have nothing to say; you can talk to me in court,' and the like. Absolutely refused to even center on the subject of conversation about [defendant] to testify — pardon me — testifying about [defendant].

"We visited the courtroom that day. And when we were walking around in the other courtroom, he was heard to say, 'I'm just going to say nothing happened.'

that although J.R., M. and J. were competent witnesses, nevertheless, M. and J. were "unavailable" for purposes of OEC 803(18a)(b). It reasoned:

"Well, as far as I'm concerned, it's — they're unable to testify based upon fear or promises of things being done on behalf of them so that they won't testify.

"* * * * *

"Yes. I think probably fear and clearly — you know, both the carrot and the stick are involved here, and mainly heard today about the carrot."

Neither M. nor J. testified at trial. Instead, Stoelk testified regarding the statements M. and J. had made to him. J.R., who was 11 at the time of trial, testified about how defendant had sexually abused him. Defendant testified that

---

"On Friday, the 29th, when [M.] came to see me, it was during that conversation that he advised me that he can't wait until this all [is] over because when it's all over, there is going to be a celebration, and that['s] his word, at the IHOP.

"I asked who all was going to be there. And the attendance at this party was, as he has testified to, namely including [defendant]. I was given to understand that he assumed [defendant] would be there. It was not a question. And during this meeting, he would not look me in the eye, he would not talk to me about [defendant], was very belligerent, and said that he had nothing to say to me, and that anything he had to say to me I could wait until court on Monday.

"[Court]: Is this a change from how they've talked to you in the past?

"[Prosecutor]: Absolutely, Your Honor. In the beginning when we went to grand jury, the children were a little bit, for lack of a better word, 'squirrelly,' but they were forthcoming. Their interview, as you will see from my attached hearsay notice, with Detective Stoelk, was very complete, very detailed, very explicit.

"The children when they testified in grand jury were understandably reluctant and a bit apprehensive, but Your Honor has the indictments before you and the children testified at grand jury, both of them. There was some growing apprehension at the lateness of the date. You'll recall from reviewing the chronology of the file, we've had two previous trials set.

"* * * * *

"That's always been a source of apprehension for the family. And the mother has been very distraught about that. And I have noted that as we would approach a trial date, the children's anxiety would increase but not to an abnormal degree. Nothing I haven't ever seen before. It was not until last week that I started hearing anything about whether these incidents even occurred, and I certainly had not seen this kind of animosity toward me.

"They also expressed incredible animosity toward the police officer which I had never heard before, talking very grown up in very kind of pat expressions which sounded very adult to me, Your Honor. They sounded to me as though they were parroting things they'd heard from a grownup."

the events Stoelk and J.R. described never occurred. The jury found defendant guilty on all of the charges.

Defendant first assigns as error the trial court's ruling that M. and J. were "unavailable" under OEC 803(18a)(b) and the admission of the officer's testimony into evidence about what M. and J. had told him. Under OEC 803(18a)(b), one of the circumstances in which a child witness may be deemed "unavailable" is if the child is "unable to communicate about the sexual conduct because of fear or other similar reason * * *." The parties disagree on whether the rule is applicable to the facts of this case to permit the introduction of Stoelk's testimony. Defendant argues that the children were *able* to communicate about the sexual abuse, but they simply did not say what the state wanted to hear. He also contends that the evidence adduced at the competency hearing did not support a finding that the children were unable to communicate because of fear or other similar reasons. The state asserts that promises of rewards for recanting is an "other similar reason" of why a child would be "unable to communicate about the sexual conduct."

Because resolution of this issue necessarily requires an interpretation of the phrase in OEC 803(18a)(b) that a child is unavailable if the child "is unable to communicate about the sexual conduct because of fear or other similar reason," our task is to discern the intent of the legislature. We begin by examining both the text and context of the statue. "If the legislature's intent is clear from the above-described inquiry into text and context, further inquiry is unnecessary." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

We conclude that the legislature's intent is clear from the express language of OEC 803(18a)(b). The specific provision in dispute requires that a child be "unable to communicate" about the allegation of sexual conduct. In this case, both M. and J. were competent witnesses, were able to and did communicate to the trial court at the pretrial hearing about the allegations of sexual conduct. The state argues that, when children have previously and consistently reported sexual crimes, and then suddenly recant, OEC 803(18a)(b) provides the court with authority to determine that the children have been rendered "unable to communicate about the sexual

conduct" by virtue of threats or promises. However, the language of the statute does not support that argument in the context of the circumstances of this case. There is nothing in the statutory language that equates a recantation of prior testimony with the inability to communicate or testify in court. On this record, we conclude that trial court erred in finding M. and J. "unavailable."

■      An error made by a trial court on an evidentiary matter is not presumed to be prejudicial and a reversal may not be predicated on a ruling that excludes evidence unless a substantial right of a party is affected. OEC 103(1). The credibility of M. and J. was necessary for the state's case. As to the convictions involving J.R., defendant argues on appeal that the "trial court's erroneous ruling inextricably and substantially impacted the entire proceedings, including the result." The state counters that the "case pertaining to J.R., the other child, was unaffected by the claimed OEC 803(18a)(b) errors, and defendant does not argue otherwise." We disagree with the state's characterization of defendant's argument. The above statement by defendant's counsel can reasonably be understood to refer to the convictions involving J.R. inasmuch as defendant has chosen to appeal from all of the convictions. Moreover, the objection to the evidentiary ruling was made in the light of a consolidated trial involving all of the victims.

It is impossible to discern what effect the evidence of recantation of two of the victims would have had on the credibility of the third victim's testimony in light of the facts that they all lived in the same household and that, in the pretrial hearing, J. testified that J.R. told him to lie about defendant abusing him because J.R. wanted to get "even" with defendant for defendant slapping him. Under the circumstances, we are unable to say that there is "little likelihood" that the exclusion of the evidence changed the result of the trial where credibility of the complaining witnesses was such a crucial issue. *State v. Carr*, 302 Or 20, 27, 725 P2d 1287 (1986).

Reversed and remanded for a new trial.