Argued and submitted June 13, conviction vacated; remanded with instructions
January 29, 1997

# STATE OF OREGON,
## *Respondent,*

*v.*

# JAMES ALBERT MAYER,
## *Appellant.*

## (93-269CR; CA A86358)

932 P2d 570

Adam L. Dean argued the cause for appellant. With him on the brief were Des Connall and Des Connall, P.C.

Janie M. Burcart, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant appeals his conviction for sexual abuse in the first degree. ORS 163.427. He assigns error to the denial of his motion in arrest of judgment and the admission of the complainant's out-of-court statements. We vacate the conviction and remand.

Defendant's conviction stems from allegations that he had sexual contact with a five-year-old boy while on a camping trip to Mount Hood. Child initially told several people that defendant had tried to touch his penis while he was urinating in the woods. Child later changed his story, alleging that defendant had actually touched his penis. Defendant consistently denied the allegations, and child eventually recanted several times.

Child did not testify at defendant's trial, but his out-of-court declarations were admitted pursuant to OEC 803(4) (statement made for purposes of medical diagnosis or treatment) and OEC 803(18a)(b) (child victim's complaint of sexual conduct). Those hearsay statements were the only direct evidence of sexual abuse. A jury found defendant guilty.

After the trial court entered a judgment of conviction, defendant moved for arrest of judgment and a new trial on the grounds that the indictment alleged an incorrect mental state and that the evidence was insufficient to support his conviction.[1] On appeal, he first assigns error to the denial of those motions.

The denial of a motion for a new trial made after entry of judgment is not reviewable on appeal, unless it is based on newly discovered evidence or juror misconduct. *State v. Sullens*, 314 Or 436, 440-43, 839 P2d 708 (1992). Because defendant raised neither of those grounds, we do not address the denial of his motion for a new trial. A motion in arrest of judgment "may be founded on either or both of the grounds specified in ORS 135.630(1) and (4), and not otherwise." ORS 136.500. ORS 135.630 provides, in part:

---

[1] Although defendant filed only a "Motion in Arrest of Judgment," within that motion he also argued that he was entitled to a new trial pursuant to ORCP 64 and ORS 136.535.

"The defendant may demur to the accusatory instrument when it appears upon the face thereof:

"(1) If the accusatory instrument is an indictment, that the grand jury by which it was found had no legal authority to inquire into the crime charged because the same is not triable in the county;

"* * * * *

"(4) That the facts stated do not constitute an offense[.]"

"Insufficiency of evidence" is not a legitimate ground for a motion in arrest of judgment; accordingly, we confine our analysis to whether the indictment states an offense.

■ The indictment charged defendant with sexual abuse in the first degree, alleging that he

"did unlawfully and knowingly subject [the victim] a person under the age of 14 years to sexual contact by touching his genitals, a sexual or intimate part of [the victim]."

The indictment does not state an offense, defendant asserts, because it incorrectly designates "knowingly," not "intentionally," as the appropriate mental state.

■ The statute defining the crime of first degree sexual abuse, ORS 163.427,[2] does not prescribe a culpable mental state. "[I]f a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence." ORS 161.115(2).

■ "Intent" and "knowledge" are distinct concepts under the criminal code. *State v. Francis*, 284 Or 621, 626, 588 P2d 611 (1978); *State v. Van Walchren*, 112 Or App 240, 246, 828

---

[2] ORS 163.427 provides, in part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less then 14 years of age[.]"

"Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person * * * for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6).

P2d 1044, *rev den* 314 Or 574 (1992). "Intentionally" means that a person "acts with a conscious objective to cause the result or to engage in the conduct so described." ORS 161.085(7). "Knowingly" means that a person "acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." ORS 161.085(8).

According to the commentary to the Oregon Criminal Code of 1971 (1975 ed.), those definitions were adopted from the New York Revised Penal Code. *State v. Jantzi*, 56 Or App 57, 60 n 1, 641 P2d 62 (1982). The Oregon commentary also provides:

> "The definition of 'knowingly' or 'with knowledge' in subsection (8) was changed by the New York reporters to eliminate any reference to result of conduct and to restrict the term to awareness of the nature of one's conduct or of the existence of specified circumstances (*e.g.* that property is stolen, that one has no right to enter a building, etc.). The New York commentary has this to say: '* * * the Revised Penal Law does not employ the word "knowingly" in defining *"result* offenses." ' " *Jantzi*, 56 Or App at 60 n 1 (emphasis in original).

Based on that language, defendant asserts that "knowingly" is inappropriate because first degree sexual abuse is "defined in terms of a particular result." We disagree. Unlike homicide or assault crimes, which are defined in terms of causing death or injury, sexual abuse in the first degree is not a "result offense." Rather, as discussed below, that crime is defined in terms of "an awareness of the nature of one's conduct."

■ In determining which mental state applies to a particular offense, we look to the conduct proscribed by the defining statute and determine whether the mental state alleged is implicit in the definition of the crime. *State v. Wolfe*, 288 Or 521, 525-26, 605 P2d 1185 (1980); *State v. Huie*, 52 Or App 975, 978-79, 630 P2d 382 (1981), *aff'd* 292 Or 335, 638 P2d 480 (1982). In *Wolfe*, the Supreme Court held that "knowingly" was sufficient to charge the offense of inmate in possession of a prohibited weapon, ORS 166.275, because it is the act of "possession" that is forbidden and "a prisoner who

knows that he has one of the listed items in his possession" has done enough to commit the crime. 288 Or at 525-26. In other words, an inmate who is aware that the prohibited circumstance exists "has met the required degree of culpability." *Id.* at 526.

In *Huie*, we held that "knowingly" was applicable to the crime of prostitution, which is defined, in part, as agreeing "to pay a fee to engage in sexual conduct or sexual contact" (ORS 167.007(1)(b)). 52 Or App at 977. Because the statute prohibits the act of "agreeing," we reasoned that a person who has knowingly agreed to pay money for sex has placed himself "squarely within the act's prohibition." *Id.* at 978-79.

Here, the conduct prohibited by ORS 163.427-(1)(a)(A) is the act of touching the sexual or other intimate parts of a child under 14 years of age for the purpose of sexual arousal or gratification. *See* note 2.[3] A person who touches a child in a sexual manner—*i.e.*, for the purpose of sexual arousal or gratification—has engaged in conduct proscribed by the legislature. Alleging that defendant was *aware* that his conduct was of a *sexual nature*, as the indictment did here, "puts him squarely within the act's prohibition." *Huie*, 52 Or App at 978. Accordingly, the indictment was sufficient to state the crime of sexual abuse in the first degree, and the trial court properly denied defendant's motion in arrest of judgment.

■ Defendant next assigns error to the admission of child's out-of-court statements. During a medical examination, child told his physician, Dr. Steinberg, that defendant had attempted to touch his penis while on the camping trip. Steinberg testified that she is chief specialist in child abuse at Oregon Health Sciences University (OHSU). When she examined child's genital and anal areas, she found no signs of abuse. Child made the same accusations in a subsequent interview with a CARES[4] employee at Emanuel Hospital.

---

[3] We note at the outset that "knowingly" does not apply to the child's age; the state need not prove that defendant knew that child was younger than 14. "In any prosecution under ORS 163.355 to 163.445 in which the criminality of conduct depends on a child's being under the age of 16, it is no defense that the defendant did not know the child's age[.]" ORS 163.325(1).

[4] Child Abuse Response and Evaluation Services.

Near the end of that interview, however, in response to the CARES worker's questions, child changed his story and alleged that defendant had actually touched his penis.[5] The trial court admitted child's declarations to Steinberg and the CARES worker as statements made for the purposes of medical diagnosis or treatment under OEC 803(4).

An out-of-court declaration is admissible under OEC 803(4) if it is made for the purpose of medical diagnosis or treatment, describes or relates "medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof" and is reasonably pertinent to medical diagnosis or treatment. *State v. Barkley*, 315 Or 420, 424, 846 P2d 390, *cert den* 510 US 837 (1993); *State v. Moen*, 309 Or 45, 55, 786 P2d 111 (1990). Defendant argues that child did not understand that the purpose of the CARES interview was to obtain medical diagnosis or treatment, and therefore that the admission of the CARES statements was error.

Whether a statement meets the requirements of OEC 804(3) is a preliminary question of fact for the trial court. OEC 104(1); *Barkley*, 315 Or at 427; *State v. Booth*, 124 Or App 282, 286, 862 P2d 518 (1993), *rev den* 319 Or 81, *cert den* 513 US 953, 115 S Ct 372 (1994). If there is evidence in the record from which the trial court could have found by a preponderance of the evidence that a child's statements were made for the purposes of medical diagnosis or treatment, we affirm the court's ruling. *Booth*, 124 Or App at 286. We find such evidence here.

After completing the physical examination at OHSU, Steinberg told child that she was referring him to "some colleagues" at the CARES unit in Emanuel Hospital. Child had been to Emanuel Hospital previously for a medical examination. The CARES interview took place in the pediatrics wing, near the burn unit and the "pediatrics short stay" ward, where children recover from minor surgery. It was

---

[5] The CARES worker testified that near the end of the interview she asked child to "show me just what really happened" using anatomically correct dolls. Leading child through each stage of his story with the dolls, she then asked, "So it looks like his hand touched this part, your penis?" Child responded "Mm, like this." When asked if defendant had said anything, child said that defendant had laughed. When asked what he thought defendant was laughing about, child said, "That he touched me."

clear that child knew he was in a medical facility. The CARES employee told child that she was not a doctor, but that she worked with doctors, and began the interview by asking whether child had ever had the measles. Based on this evidence, the trial court could have concluded that child understood the CARES interview to be an extension of the medical examination at OHSU and therefore that its purpose was to obtain medical diagnosis or treatment.

■ ■ Defendant also asserts that child's CARES statements were unreliable because, during the interview, child changed his story from an attempted to an actual touch, was subject to leading questions and later recanted all of his accusations. We disagree. "Reliability can be inferred without more, where the evidence falls within a firmly rooted hearsay exception." *State v. Stevens*, 311 Or 119, 142, 806 P2d 92 (1991). The exception codified in OEC 803(4) is "firmly rooted," and reliability is therefore presumed. *Moen*, 309 Or at 63. Because defendant does not otherwise contest the applicability of OEC 803(4), his reliability argument is without merit.

■ ■ Defendant next assigns error to the admission of statements child made to his mother and a police detective, in which child accused defendant of actually touching child's penis. The court admitted those statements pursuant to OEC 803(18a)(b), which provides a hearsay exception for statements by a child under the age of 12 that relate to an act of sexual conduct involving the child. Before admitting such statements, the trial court must find, among other things, that

> "there is corroborative evidence of the act of * * * sexual conduct and of the alleged perpetrator's opportunity to participate in the conduct[.]" OEC 803(18a)(b).

Corroborative evidence "might include a confession, an eye witness account, physical evidence and evidence showing that the accused had access to the purported victim." *State v. Renly*, 111 Or App 453, 463, 827 P2d 1345 (1992).

■ As corroborative evidence of sexual conduct,[6] the trial court relied on the statements child made to Steinberg

---

[6] Defendant does not dispute the evidence establishing his opportunity to participate in sexual conduct.

and the CARES employee that were admitted under OEC 804(3). That was error. An out-of-court statement admissible under another hearsay exception cannot qualify as corroborative evidence under OEC 803(18a)(b). *See id.* at 465-66 (child's "excited utterance" cannot corroborate that sexual conduct occurred).

> "The legislature clearly intended that a defendant not be convicted on hearsay alone; therefore, a declarant's admissible statement cannot be used to bootstrap into admissibility otherwise inadmissible statements made by the same declarant." *Id.* at 466.

The state contends that the trial court actually relied on Steinberg's *diagnosis* to corroborate the act of sexual conduct, and that diagnosis was based on nonhearsay— *i.e.*, evidence that child began bed-wetting, emotionally acting out, and pulling down his pants and touching his penis after the camping trip, and that he was reluctant to allow a genital exam by Steinberg. The record does not support the state's contention. Although the prosecutor offered that evidence as corroboration at trial, the court made no mention of it and instead focused entirely on child's *statements* admitted under OEC 803(4).[7]

In *Renly*, the state argued on appeal that the child's resistance to a pediatrician's below-the-waist examination tended to corroborate the act of sexual conduct. We rejected that argument because it was "raised for the first time on appeal, and the trial court did not decide anything about it in the first instance." 111 Or App at 465. Here, as in *Renly*, the trial court improperly relied on other hearsay statements as corroboration and made no factual findings pertaining to child's behavior or Steinberg's diagnosis.[8]

---

[7] The trial court stated:

"Why cannot the statements—the corroboration required by (18a)(b) be offered under some other exception to the hearsay rule? And I'm inclined to think * * * that [if] the CARES tape and Dr. Steinberg's testimony are admissible under 803(4), that alone is sufficient to take this case to the jury in terms of the sexual touching without regard to the other elements that may need to be proved. If that is sufficient alone to go to the jury, why is it not sufficient corroboration? * * * [W]hy can't the hearsay of 803(4) be sufficient corroboration for the hearsay of (18a)(b)?"

[8] For example, mother testified that, in the year preceding the camping trip with defendant, child had wet the bed only three times, three to four months before

"For us to be able to review a decision to admit hearsay evidence by an unavailable declarant under OEC 803(18a)(b), the trial court must have made the required findings on the record." 111 Or App at 468.

In the absence of those findings, we cannot say that the trial court properly admitted child's statements to his mother and the detective under OEC 803(18a)(b). The most appropriate disposition would be to remand for the trial court to make the findings required by OEC 803(18a)(b).

■   Remand is unnecessary, however, if the erroneous admission of child's statements to his mother and the detective was harmless. Error is harmless if "there is little likelihood that the error affected the verdict." *State v. Kitzman*, 323 Or 589, 606, 920 P2d 134 (1996). In this case, credibility was a crucial issue. There was neither eye-witnesses nor direct physical evidence, and defendant denied ever having touched child's genitals. The only properly admitted evidence of actual contact was statements child made to the CARES employee.[9] However, as discussed above, throughout much of that interview, child alleged only an attempted touch, changed his story after he was asked arguably leading questions, *see* note 5, and recanted his allegations both before and

---

the trip. After the trip, she testified, child wet the bed nearly every night for two months. But Steinberg testified that child began to wet the bed every night around June 20, 1993, four days before the trip. Whether the trial court believes mother or Steinberg is significant in determining whether child's later bed wetting was attributable to something that occurred during or *before* the camping trip.

Furthermore, mother testified that after the trip child began acting more emotional and aggressive. However, there was also evidence that child had exhibited aggressive behavior since the age of two, when he was diagnosed with attention deficit and hyperactivity disorder (ADHD). Steinberg attributed the worsening of child's ADHD symptoms to the possibility of sexual abuse. However, mother testified that, in the same year that child made his allegations, he was placed in kindergarten, that he does not like to be placed in new situations and that he cannot control himself when he gets emotionally upset. The trial court did not determine, as a factual matter, whether the recurrence of child's ADHD symptoms was caused by the possibility of sexual abuse, by going to school for the first time, or by something else entirely.

Also, only mother testified that child began dropping his pants and touching his penis after the camping trip, and she could not remember whether she had ever reported this to the police, Steinberg or the CARES worker. At trial, defendant disputed that child had ever engaged in such behavior, and the trial court made no findings on the issue.

[9] Child's statements to his physician, which defendant does not challenge, only involved allegations that defendant *tried* to touch child's penis.

after the interview. Defense counsel at trial vigorously attacked the credibility of the CARES statements on those grounds.

Child's declarations to his mother and the detective, however, tended to reinforce his allegations of actual contact. It is impossible to determine what effect those statements had on the jury's credibility determinations. We therefore cannot say that there was little likelihood that the error affected the verdict, "especially where credibility of the complaining witness[ ] was such a crucial issue." *State v. Higgins*, 136 Or App 590, 596, 902 P2d 612 (1995). The error was not harmless. Accordingly, we vacate defendant's conviction for sexual abuse in the first degree and remand to the trial court for factual findings on the issue of corroboration.

Defendant also challenges the *reliability* of the statements child made to his mother and the detective.[10] The trial court made extensive factual findings in concluding that child's statements to the detective were reliable. However, we cannot review the court's reliability determination relating to the statements child made to mother, because the court made no factual findings on that issue. The court merely concluded that "the first disclosure is very important." On appeal, the state cites evidence supporting the reliability of those statements. However, as with the corroboration issue, we do not know how the trial court viewed that evidence as it relates to mother's testimony. On remand, we instruct the court to make factual findings pertaining to the reliability of statements child made to mother.

Conviction vacated; remanded with instructions to make findings on issues of corroboration and reliability. If the court finds sufficient corroboration and sufficient reliability, it shall reinstate the conviction; if the court does not find sufficient corroboration or sufficient reliability, it shall order a new trial.

---

[10] Hearsay is admissible pursuant to OEC 803(18a)(b) only if "the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability." The legislature has provided a list of factors that a court may consider in determining the reliability of hearsay statements under OEC 803(18a)(b). *See* OEC 803(18a)(b)(A)-(K).