Submitted May 29, affirmed August 1, 2012

In the Matter of A. G.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. G.,
*Appellant.*

Klamath County Circuit Court
1000082JV;
Petition Number 1100389M;
A150208

283 P3d 450

Holly Telerant, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Father appeals a judgment finding his biological son, AG, to be within the court's jurisdiction based on allegations that father's emotional and physical abuse toward his four stepchildren presented a danger to his biological son. The only evidence that the juvenile court relied on to assert jurisdiction was out-of-court statements made by father's stepchildren, who had described the abuse to two testifying witnesses. On appeal, father argues that the juvenile court erred in admitting hearsay evidence over his objection and seeks reversal of the jurisdictional finding as to AG on that basis. For the reasons that follow, we affirm.

The procedural facts are undisputed and taken from the record. We review the juvenile court's legal conclusion for errors of law. *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010). Mother and father are married and have one child together, AG, who was three years old at the time of trial. Mother had four children from a previous relationship, H, D, M, and C (collectively "stepchildren"). In February 2011, the Department of Human Services (DHS) took custody of all the children on the basis of abuse. In July 2011, DHS filed a petition to establish jurisdiction. DHS alleged that, pursuant to ORS 419B.100(1)(c), the children were under threat of harm from father because

"* * * father to [AG] * * * has physically and emotionally abused the children, [H], [D], [M], and [C], in the form of shooting the children with a BB gun, slamming their heads into the wall, and aiming a shotgun at [H]'s chest then shooting the gun when she ran away from him. [Father] also threatened the children if they made disclosures of this abuse."

The juvenile court held separate jurisdictional hearings for mother and father. The court first held a hearing concerning the allegations against mother and entered a jurisdictional and dispositional judgment against her applicable to all five children. Then the juvenile court held a hearing concerning allegations against father. At that hearing, the juvenile court asked the parties whether the jurisdictional proceeding would be for just AG or for all five children:

"The Court:   All right, this is the time set for the hearing in—is this on all the kids today or just on [AG]?

"[Mother's attorney]:   It's on all of them.

"The Court:   All five kids?

"[State's attorney]:   It's just the father too, your Honor.

"The Court:   Just the father.

"[State's attorney]:   Is my understanding.

"[Father's attorney]:   Well, I don't know if—did Mom already have a prima facie or—

"The Court:   Yeah.

"[Father's attorney]:   Oh, okay."

Father neither requested a separate proceeding for his biological child, AG, nor objected to the court's decision to proceed with the hearing on all five children together. Then, the court asked if everybody was ready to proceed, and all parties assented.

DHS presented testimony from Wright, a DHS case worker, who had interviewed the children. The stepchildren told Wright that father locked them in their room when he and mother were fighting, but they could hear mother screaming and being thrown against the wall. The stepchildren reported that, after mother and father argued, mother would have visible bruises. H reported that father pointed a shotgun at her chest and told her to get off his property and that, as she ran away, father fired in her direction. The stepchildren also reported that father shot them with a BB gun, leaving visible bruises on some of the stepchildren. On one occasion, father dumped cold water on the children when they were outside with little clothing in the middle of winter. The stepchildren also reported that, as punishment, father made them face a wall and would "smack their heads against the wall" if they touched the wall. The stepchildren reported to Wright that father told them not to report any of the abuse or they would get in trouble.

Father's attorney timely objected to Wright's testimony of the stepchildren's out-of-court statements on

hearsay grounds. DHS relied solely on OEC 801(4)(b)(A), admission by a party-opponent, for the admissibility of the stepchildren's statements. Father's attorney acknowledged that under *State ex rel Juv. Dept. v. Cowens*, 143 Or App 68, 922 P2d 1258, *rev den*, 324 Or 395 (1996); *State ex rel Dept. of Human Services v. Meyers*, 207 Or App 271, 140 P3d 1181, *rev den*, 341 Or 450 (2006); and *Dept. of Human Services v. G. D. W.*, 246 Or App 66, 264 P3d 205 (2011), *rev allowed*, 351 Or 678 (2012), when DHS offers a child's out-of-court statements in a dependency case, they are admissible as nonhearsay statements of a party-opponent under OEC 801(4)(b)(A), because the child is a party adverse to DHS.[1] In *Cowens*, the court concluded that a child's interest is adverse to DHS because evidence introduced by DHS to establish jurisdiction would infringe on a child's interest to maintain a "parent-child relationship." 143 Or App at 71-72. But father argued that *Cowens* and its progeny are inapposite because the stepchildren's interests are not adverse to DHS. In this case, father asserted that, because he is not the stepchildren's biological father, there is no parent-child relationship and any out-of-court statements DHS offered would not be adverse to the stepchildren. The court reserved ruling on the issue and allowed the children to present evidence.

The children's attorney presented testimony from Dr. Purvis, a medical examiner for Child Abuse Response and Evaluation Services (CARES), who conducted a physical examination of the stepchildren. As part of the examination, Purvis observed a CARES forensic examiner interview each child. Purvis then generated a written CARES evaluation report. Purvis testified to statements the stepchildren made to the forensic interviewer concerning father's abuse toward them. The children's attorney also sought to enter into evidence Purvis's CARES assessment reports regarding each stepchild. Again, father's attorney timely objected to the introduction of the stepchildren's statements and the CARES report on hearsay grounds. DHS and the children's attorney relied on the medical exception to the hearsay

---

[1] Pursuant to OEC 801(4)(b)(A), a statement is not hearsay if "[t]he statement is offered against a party" and is "[t]hat party's own statement, in either an individual or a representative capacity."

rule, OEC 803(4), for the admissibility of the stepchildren's statements. The juvenile court provisionally admitted the testimony and report, but reserved ruling on the issue for a separate hearing.

After holding a separate hearing to determine the hearsay issue, the juvenile court disagreed with father and concluded that it would admit the stepchildren's statements, as related by both Wright and Purvis. The court ruled that the statements were admissions of a party-opponent, OEC 801(4)(b). The court also ruled that the statements were admissible under the medical care hearsay exception, OEC 803(4), and the statement of abuse hearsay exception, OEC 803(18a)(b). Based on Wright's and Purvis's testimony regarding the stepchildren's statements, the juvenile court concluded that DHS proved the allegations in the petition and took jurisdiction over all the children.

Father appeals only the juvenile court's jurisdiction over his biological child, AG; he is not appealing jurisdiction as it pertains to his stepchildren. Father renews his contention that the juvenile court should have excluded, on the basis of inadmissible hearsay, the stepchildren's statements of abuse that were admitted into evidence through the testimony of Wright and Purvis and the written CARES evaluation. Father, however, is not contesting the validity of the holding in *Cowens*. Rather, he argues that *Cowens* does not apply to the jurisdiction case concerning AG because, "for the 'party-opponent' exception to the hearsay rule to apply, the declarant must be a party. * * * [U]nlike the child declarants in [*Cowens, Meyers*, and *G. D. W.*], father's stepchildren are not parties to [AG]'s case." In essence, if father's argument is correct—that stepchildren are not parties to AG's dependency case—then the stepchildren's out-of-court statements could not be admissions of party-opponents and would be inadmissible hearsay evidence. And because all of the evidence of abuse derives from those statements, the juvenile court's error would be prejudicial and require reversal. If the stepchildren are parties to AG's dependency case, father argues in the alternative that the statements are still inadmissible hearsay.

DHS responds that all five children were named parties to the case and that father's attempt to limit the appeal to AG does not change the fact that the juvenile court adjudicated petitions involving all of the stepchildren in addition to AG. And, because stepchildren's statements made to Wright and Purvis were admissions of a party-opponent, the statements, offered by DHS and by the children, were properly admitted under *Cowens*.[2] We agree with DHS as to the stepchildren's statements that DHS offered through Wright's testimony.

Although father argues that the stepchildren are not parties to the case regarding jurisdiction of AG and, for that reason, the party-opponent rule does not apply, the record contradicts father's assertion. At the beginning of the jurisdictional hearing, the juvenile court asked the parties whether they were proceeding with just AG or all five children. Mother's attorney informed the court that the proceeding was for all five children. Father did not object or deny that statement. The court asked again whether the hearing would be for all five children, and the state's attorney stated that, "[i]t's just the father too[.]" Again, father did not object to that statement of the issues for the hearing. The court asked if all the parties were ready to proceed, and father's attorney answered affirmatively without raising any objection or indicating to the court that he wished to bifurcate the proceedings so that the court would decide jurisdiction over his biological child separate from jurisdiction over the stepchildren. Based on that record, the children were grouped together as one set of parties, and the stepchildren were parties to AG's case.

We now turn to whether the stepchildren's statements were inadmissible hearsay. Generally, an out-of-court

---

[2] DHS first argues that father's arguments are not justiciable because the court already has jurisdiction over the children through mother's jurisdictional judgment and, therefore, father's appeal would have no practical effect on his rights. *See State ex rel Juv. Dept. v. C. S. W.*, 223 Or App 177, 181, 195 P3d 408 (2008) (in determining whether a case is justiciable, the court "considers whether its decision will have a practical effect on the rights of the parties"). We disagree. An appeal from a judgment of jurisdiction as it relates to one parent, even though the court has taken jurisdiction over the children through the other parent, "has a significant practical effect on [the appealing parent] because it provides the legal basis for the court to require [that parent] to complete services." *Dept. of Human Services v. D. S. F.*, 246 Or App 302, 313 n 5, 266 P3d 116 (2011).

statement of a party-opponent is not hearsay and is admissible. OEC 801(4)(b)(A). The rationale behind the rule is that a party's own admissions "are excluded from the category of hearsay on the theory that their admissibility is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule." Laird C. Kirkpatrick, *Oregon Evidence* § 801.03[2], 673 (5th ed 2007) (quoting 1981 Conference Committee Commentary to the Oregon Evidence Code).

In *Cowens*, we applied that rule to a child's statement that the father abused the child, even though it appeared that the state and the child's interests were aligned. We reasoned that "minor children have an interest in maintaining a familial relationship with their parents." 143 Or App at 71. "[W]hen the state seeks to interfere with the parent-child relationship * * * the child has interests adverse to the state. As such, the state's evidence is offered not only against the parent, but also against the child." *Id.* at 72. We reaffirmed that holding in *Meyers*, 207 Or App at 280-81, and in *G. D. W.*, 246 Or App at 70. Although father now challenges the applicability of *Cowens* because of his status as a stepfather to the stepchildren, for purposes of dependency proceedings, Oregon courts recognize the existence of a parent-stepchild relationship. *See Belmont v. Black et al*, 218 Or 514, 524, 346 P2d 367 (1959) (acknowledging a benefit to a child from the "mutual affection and companionship" between stepfather and child). Thus, we conclude that the stepchildren's out-of-court statements were adverse to their own interest in maintaining a familial relationship with father, and the juvenile court properly admitted the statements offered by DHS as nonhearsay admissions of a party-opponent, based on this court's line of cases beginning with *Cowens*.

The rationale of *Cowens*, however, does not apply to similar statements offered by all of the children. The children offered the stepchildren's out-of-court statements through Purvis's testimony and the CARES written evaluation. The children, though, cannot be party-opponents with respect to an offer of their own statements. Nonetheless, based on the stepchildren's statements as related by Wright, there is evidence to support the juvenile court's finding that DHS

proved the facts supporting jurisdiction that were alleged in the petition. Wright testified that the stepchildren reported to her that father shot them with a BB gun, "smacked their heads against the wall," dumped cold water on them when they were outside in the middle of winter and had on little clothing, and fired a shotgun at H as she ran away. The stepchildren also reported that father told them they would be in trouble if they reported the abuse. Accordingly, the juvenile court properly found that DHS had proven that father physically and emotionally abused his stepchildren and that there was a threat of harm to AG as alleged in the petition, and it properly took jurisdiction over AG.

In light of our conclusion that the stepchildren's out-of-court statements are nonhearsay admissions of a party-opponent, we decline to reach father's remaining assignments of error that the juvenile court erroneously admitted the stepchildren's out-of-court statements under the child abuse exception, OEC 803(18a)(b), and the medical diagnosis exception, OEC 803(4).

Affirmed.