Submitted on remand from the Supreme Court May 15, affirmed
August 14, 2013

In the Matter of A. G.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. G.,
*Appellant.*

Klamath County Circuit Court
1000082JV;
Petition Number 1100389M;
A150208

308 P3d 296

Peter Gartlan, Chief Defender, and Holly Telerant, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

The Supreme Court allowed father's petition for review of our decision in this juvenile dependency case, *Dept. of Human Services v. J. G.*, 251 Or App 515, 283 P3d 450 (2012), and vacated and remanded for reconsideration in light of the court's subsequent decision in *Dept. of Human Services v. G. D. W.*, 353 Or 25, 292 P3d 548 (2012). On remand, we affirm the judgment finding father's biological son, A, to be within the court's jurisdiction based on allegations by the Department of Human Services (DHS) that father's emotional and physical abuse toward his four stepchildren presented a danger to his biological son. In asserting jurisdiction, the juvenile court relied on evidence recounting out-of-court statements made by father's stepchildren, also parties to the proceeding before the juvenile court. We conclude that those statements were admissible as statements made for purposes of medical diagnosis or treatment under OEC 803(4).[1]

We reiterate the undisputed facts set forth in our earlier opinion. Mother and father are married and have one child together, A, who was three years old at the time of trial. Mother had four children from a previous relationship, H, D, M, and C (collectively "stepchildren"). In 2011, DHS took custody of all the children on the basis of abuse and then filed a petition to establish jurisdiction. DHS alleged that, pursuant to ORS 419B.100(1)(c), the children were under threat of harm from father because

> "father to [A] * * * has physically and emotionally abused the children, [H], [D], [M], and [C], in the form of shooting the children with a BB gun, slamming their heads into the wall, and aiming a shotgun at [H]'s chest then shooting the gun when she ran away from him. [Father] also threatened the children if they made disclosures of this abuse."

The juvenile court held separate jurisdictional hearings for mother and father. At father's hearing, the juvenile court asked the parties whether the jurisdictional

---

[1] OEC 803(4) provides, "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

proceeding would be for just A or for all five children. Father assented to a hearing as to all of the children. DHS then presented testimony from Wright, a DHS case worker, who had interviewed the children.

Wright recounted what the stepchildren had said to her. They told Wright that father locked them in their room when he and mother were fighting, but that they could hear mother screaming and being thrown against the wall. Stepchildren reported that, after mother and father argued, mother would have visible bruises. H reported that father pointed a shotgun at her chest and told her to get off his property and that, as she ran away, father fired in her direction. Stepchildren also reported that father shot them with a BB gun, leaving visible bruises on some of stepchildren. On one occasion, father dumped cold water on the children when they were outside with little clothing in the middle of winter. Stepchildren also reported that, as punishment, father made them face a wall and would "smack their heads against the wall" if they touched the wall. Stepchildren said that father told them not to report any of the abuse or they would get in trouble.

Father's attorney timely objected to Wright's testimony as to stepchildren's out-of-court statements on hearsay grounds. DHS relied solely on OEC 801(4)(b)(A), admission by a party-opponent, for the admissibility of stepchildren's statements to Wright. The court reserved ruling on the issue and allowed the children to present evidence.

The children's attorney presented testimony from Dr. Purvis, a medical examiner for Child Abuse Response and Evaluation Services (CARES), who conducted a physical examination of stepchildren. As part of the examination, Purvis observed a CARES forensic examiner interview each child. Purvis then generated a written CARES evaluation report. Purvis testified as to statements that stepchildren made to her and to the forensic interviewer concerning father's abuse toward them. The children's attorney also sought to enter into evidence Purvis's CARES assessment reports regarding each stepchild. Again, father's attorney timely objected to the introduction of stepchildren's statements and the CARES report on hearsay grounds. DHS and

the children's attorney relied on the medical exception to the hearsay rule, OEC 803(4), for the admissibility of stepchildren's statements. The juvenile court provisionally admitted the testimony and report, but reserved ruling on the issue for a separate hearing.

Ultimately, after a hearing on the evidentiary issues, the juvenile court agreed with DHS that stepchildren's statements were admissions of a party-opponent. The court also ruled that the statements were admissible under the medical care hearsay exception, OEC 803(4), and the "statement of abuse" hearsay exception, OEC 803(18a)(b).

We affirmed the court's evidentiary ruling under OEC 801(4)(b)(A) that stepchildren's statements were admissible through Wright's testimony as admissions of a party-opponent, without reaching the alternative bases for admission of their statements relied upon by DHS or by the court. *J. G.*, 251 Or App at 523. Our holding rested on a line of cases beginning with *State ex rel Juv. Dept. v. Cowens*, 143 Or App 68, 922 P2d 1258, *rev den*, 324 Or 395 (1996), and ending with *Dept. of Human Services v. G. D. W.*, 246 Or App 66, 264 P3d 205 (2011), *rev'd*, 353 Or 25, 292 P3d 548 (2012), in which we had held that a child's out-of-court statements offered by DHS in a dependency case are admissible as nonhearsay statements of a party-opponent under OEC 801(4)(b)(A), because the child can be considered to be a party adverse to DHS.[2] That line of cases is no longer good law.

In *G. D. W.*, the Supreme Court examined the legislature's intent in enacting OEC 801(4)(b)(A) and concluded that, "when OEC 801(4)(b)(A) refers to an out-of-court statement being offered 'against' a party, it means that the statement is offered against a position that the party actually has declared in the proceeding, by pleadings or otherwise." 353 Or at 37. Thus, DHS must show that a child who is the subject of a juvenile dependency proceeding has "declared a position on the issues before the court that is adverse to the allegations in the dependency petition," and then DHS, "as

---

[2] Pursuant to OEC 801(4)(b)(A), a statement is not hearsay if "[t]he statement is offered against a party" and is "[t]hat party's own statement, in either an individual or a representative capacity."

the proponent of those allegations, may offer the child's out-of-court statements *against the child* under OEC 801(4)(b)(A)." 353 Or at 38 (emphasis in original). DHS did not make the required showing in this case, and so the juvenile court's admission of stepchildren's statements as admissions of a party-opponent under OEC 801(4)(b)(A) was error.

Accordingly, we now review whether stepchildren's out-of-court statements describing father's abuse were admissible under one of the other bases identified by the juvenile court. We affirm the juvenile court's conclusion that stepchildren's statements made in the course of the CARES assessments were admissible under OEC 803(4) as statements made for the purposes of medical diagnosis or treatment.

A declarant's out-of-court statement is admissible under OEC 803(4) if it (a) is made for purposes of medical diagnosis or treatment; (b) describes or relates medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof; and (c) is reasonably pertinent to diagnosis or treatment. *State v. Moen*, 309 Or 45, 55, 786 P2d 111 (1990). "This exception is frequently used in prosecutions for physical or sexual abuse to admit statements by the victim describing the nature of the injury and, when pertinent to treatment, the identity of the perpetrator." Laird C. Kirkpatrick, *Oregon Evidence*, § 803.04[3][g], 741 (5th ed 2007).

Father argues that "the juvenile court erroneously admitted the stepchildren's CARES statements insofar as those statements were not made for purposes of medical diagnosis or treatment[.]" (Internal quotation marks omitted.) Father does not contend that stepchildren's statements fail to satisfy the second and third requirements of OEC 803(4) as articulated in *Moen*.

Whether a statement satisfies the requirements of OEC 804(3) is a preliminary question of fact for the trial court. *State v. Mayer*, 146 Or App 86, 92, 932 P2d 570 (1997). It is well established that, as with any other foundational

fact, the declarant's motivation must be determined on a case-by-case basis by reference to the circumstances under which those statements were made. *See State v. Barkley,* 315 Or 420, 424, 846 P2d 390 (1993); *Moen,* 309 Or at 55-56; *State ex rel Juv. Dept. v. Pfaff,* 164 Or App 470, 482, 484, 994 P2d 147 (1999); *State ex rel Juv. Dept. v. Cornett,* 121 Or App 264, 270-71, 855 P2d 171 (1993), *rev dismissed,* 318 Or 323 (1994). We will affirm the trial court's ruling if there is evidence in the record from which the court could have found by a preponderance of the evidence that a child's statements were made for the purposes of medical diagnosis or treatment. *Pfaff,* 164 Or App at 493-94 (Edmonds J., dissenting); *Mayer,* 146 Or App at 92. We conclude that such evidence is present here.

In considering whether there are facts in the record sufficient "to support a finding under the first of the *Moen* requirements[,]"

"[o]ur cases examine facts like location (hospital versus private office), connection with a physical examination (social worker in room during physical or introduced as a continuation of examination or interview with social worker observed by physician through one-way mirror), and use of * * * information gathering (to protect victim from intrafamilial abusers, to treat the victim, or to confirm or support diagnosis)."

*Pfaff,* 164 Or App at 496 (Edmonds, J., dissenting) (citing *State v. Jensen,* 313 Or 587, 593-96, 837 P2d 525 (1992) and *State v. Logan,* 105 Or App 556, 559, 806 P2d 137, *rev dismissed as improvidently allowed,* 312 Or 16 (1991)). *Logan* is particularly instructive.

In that case, the defendant assigned error to the trial court's admission of the out-of-court statements of an abuse victim. *Logan,* 105 Or App at 558. The court permitted the state to present both the testimony of the CARES physician who examined the victim as well as a videotape of an interview of the victim conducted by another CARES employee following the physician's examination. *Id.* at 558-59. On appeal, the defendant argued that the victim's statements were not made for the purposes of medical diagnosis or treatment. *Id.* at 560. We noted that the physician told the victim that she was a doctor and that the purpose of

the appointment was generally "'to do a checkup to see how *** healthy you are, and if there's anything that needs to be done.'" *Id.* at 558, 560. We also noted that the physician's questions regarding the abuse were asked in the context of a complete physical examination. *Id.* at 560.

Based on those facts, we held that, regarding the physician's testimony, "[t]he trial court could conclude that the child's answers were motivated by a desire for medical diagnosis or treatment." *Id; see also Pfaff,* 164 Or App at 484-85 (citing *Logan* and concluding that the declarant's statements were made for the purpose of diagnosis and treatment because the witness relaying those statements explained the purpose of the evaluation to the declarant and the declarant's statements were thus informed by that explanation). Regarding the admission of the videotaped interview, we similarly held that "[t]he trial court could conclude that the child knew that the interview was part of her doctor visit and was motivated in answering the questions by a desire for medical diagnosis or treatment[,]" because the physician introduced the interviewer to the victim at the outset of the appointment and explained to the victim that the interview, which took place immediately after and in the same location as the examination, was an aspect of the overall assessment. *Logan,* 105 Or App at 559, 562; *see also Barkley,* 315 Or at 425-26 (concluding that the trial court was entitled to find that a child's videotaped statements to a CARES interviewer were made for the purposes of medical diagnosis or treatment where the CARES physician introduced the child to the interviewer following a physical examination and explained that the interview was important in determining the appropriate treatment); *Jensen,* 313 Or at 595-96 (holding that the trial court properly could have found that testimony by a nurse relating a child's out-of-court statements to that nurse were made for purposes of medical diagnosis or treatment where the nurse explained to the child that the nurse needed information regarding the source of the abuse in order to properly treat the child); *Mayer,* 146 Or App at 92-93 (determining that the trial court could conclude that a child understood his CARES interview "to be an extension of the medical examination *** and therefore that its purpose was to obtain medical diagnosis or treatment" where

the interview took place in a medical setting and the child knew that the interviewer "worked with doctors").

Here, as in *Logan*, the CARES doctor testified that she explained to each stepchild that "we do the examination *and* the interview for the purposes of medical diagnoses * * * and treatment of any medical problems that we find." (Emphasis added.) The record also reveals that each assessment—both the physical examination component and the interview component—took place at the same "medical center." Before each stepchild's assessment, the CARES physician and interviewer together "introduced themselves" to the stepchild and "explained the medical assessment process and their roles in that process." For each stepchild, the doctor conducted a complete physical examination, including, but not limited to, symptoms and signs of alleged abuse by father. The CARES interviewer was present throughout each of the physical examinations conducted by the doctor, who, in turn, observed each of the interviews, which took place at the same location. CARES videotaped the interviews of stepchildren, and the CARES evaluations received into evidence each contain summaries of the content of those interviews.

Based on the foregoing, we conclude that the record supports the juvenile court's conclusion that the out-of-court statements made by stepchildren to the CARES doctor and interviewer during the course of stepchildren's CARES medical assessments were made for the purpose of medical diagnosis or treatment. Those statements are, therefore, admissible under OEC 803(4).

Father concedes that "this court has held that a CARES doctor's explanation to a child [is] sufficient to bring a hearsay statement within the medical treatment exception," and that "[h]ere, as in *Logan*, the children were examined by a CARES doctor primarily for the purpose of finding *medical* evidence that abuse had occurred, even if *the department's primary motive was to protect the children* rather than investigating father." (Emphasis added.) Father argues that, nevertheless, the juvenile court erred in admitting stepchildren's statements under OEC 803(4) because

those statements "lack[ ] any of the conventional indicia of reliability." That argument is unavailing as a matter of law. Oregon courts have held that OEC 803(4) is a "firmly rooted" hearsay exception, *Moen*, 309 Or at 62-63; *accord Mayer*, 146 Or App at 93, and that, when evidence falls within such an exception, reliability is inferred. *Cornett*, 121 Or App at 284-85 (rejecting the defendants' argument "that the state should be required to jump an additional hurdle and prove that statements admitted under OEC 803(4) are reliable").

Accordingly, we reject father's argument that "the investigative purpose of the CARES evaluation undermined its medical purpose and presumption of reliability." It is true that we have previously held that admission of hearsay statements like those at issue here may violate a criminal defendant's federal constitutional right to confrontation. *State ex rel Juv. Dept. v. S. P.*, 218 Or App 131, 156, 178 P3d 318 (2008), *aff'd*, 346 Or 592, 598, 215 P3d 847 (2009) ("Because a primary purpose of the [CARES] interview was to establish or prove past events potentially relevant to later criminal prosecution, the Court of Appeals determined that [the child's] statements during that interview were testimonial." (Internal quotation marks omitted.)). That conclusion, however, does not affect our analysis of the admissibility of such statements under OEC 803(4) because, first, the two inquiries—evidentiary and constitutional—are distinct, and, second, as father acknowledges, he "does not have a right to confrontation here, as he would in a criminal case." *Compare Cornett*, 121 Or App at 279 ("[OEC 803(4)] focuses on the motive of the declarant."), *and Pfaff*, 164 Or App at 482 (stating that, regarding OEC 803(4), "the declarant's motivation * * * is the touchstone of reliability"), *with S. P.*, 218 Or App at 155 (concluding that, for purposes of confrontation clause analysis, a child's "supposed subjective purpose in making his statements during the CARES interview is largely immaterial to the determination of whether those statements are 'testimonial'"). In *S. P.*, we observed that "the CARES interview process serves multiple concurrent purposes[,] * * * one of [which] is to obtain an accurate diagnosis of whether a child has, in fact, been * * * abused—which, in turn, will promote effective medical and psychological treatment." 218 Or App at 152-53. We then noted that

"that purpose is not problematic, except in [criminal] cases (like this) where the state seeks to rely at trial on a child's statements during a CARES interview and the child is not 'available'—and, thus, is not subject to cross-examination. That—*viz.*, conviction based on evidence not susceptible to cross-examination—is the constitutional vice that *Crawford* confronts."

*Id.* at 153 (referring to *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), a leading case regarding a criminal defendant's federal constitutional right to confront witnesses). In sum, the evident forensic utility of a CARES assessment may, *in the confrontation context,* "trump" the admissibility of an out-of-court statement that is otherwise admissible under OEC 803(4), but that does not control where, as here, no right to confrontation exists.[3]

We similarly reject father's argument that stepchildren's statements are inadmissible because they were made "many months after the department had placed the children in substitute care" and, thus, stepchildren "were no longer at any immediate risk of harm." The defendant in *Logan* also argued that OEC 803(4) could not apply to the child's out-of-court statements in that case "because the child already had been removed from the home." 105 Or App at 561. We held that the CARES physician's testimony relating the child's statements was admissible because the child "still needed protection in the form of limiting who could visit her and establishing under what conditions she could be returned home[,]" and because the statements were "important in assessing the psychological trauma and recommending appropriate treatment." *Id.* The same reasoning applies here, where the statements at issue clearly bear directly on the appropriate treatment for stepchildren as well as the potential danger to A that father's abuse represents. Thus, father's efforts to undermine the reliability of stepchildren's

---

[3] Indeed, the forensic relevance of statements recounted during a CARES assessment actually seems to support the application of OEC 803(4) to such statements. *See S. P.,* 218 Or App at 154 n 15 (noting that the dual purposes—forensic and medical—that CARES assessments serve "may well be mutually reenforcing *** [because] [a]ccurate diagnosis can enhance effective prosecution, and effective prosecution of perpetrators protects child victims and can promote their treatment and recovery").

statements were considerations for the juvenile court as it weighed the evidence.

Stepchildren's out-of-court statements, properly admitted through the doctor's in-court testimony and the CARES evaluations as statements made for purposes of medical diagnosis or treatment, collectively contain multiple iterations by stepchildren of facts supporting the allegation by DHS that father's emotional and physical abuse toward stepchildren presented a danger to his biological son, A. We thus affirm the juvenile court's judgment, based on that allegation, finding A to be within the court's jurisdiction.

Affirmed.