No. 415 June 20, 2024 309

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of G. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. D. H.,
*Appellant.*

Petition Number
T2022076

Multnomah County Circuit Court
22JU03478; A182341

Patricia L. McGuire, Judge.

Submitted April 22, 2024.

Kristen G. Williams filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Father appeals from a termination of parental rights (TPR) judgment as to his daughter, G. In his first assignment of error, father argues that the trial court erred in admitting testimony by G's therapist regarding statements G made to the therapist during intake, and in admitting G's statements contained in the therapy records regarding physical abuse by father. For that assignment, we conclude that the trial court did not err in admitting G's statements under OEC 803(4) because the record supports a finding that G made her statements to her therapist for the purposes of medical diagnosis or treatment. Defendant's third through fifth assignments of error challenge the juvenile court's termination of his parental rights. We review those assignments *de novo* and conclude that there was clear and convincing evidence in the record to demonstrate that termination of father's parental rights was in G's best interest. Accordingly, we affirm.

Although hearsay is generally excluded under OEC 802, it may be admitted into evidence under OEC 803(4) if the statement is made "for purposes of medical diagnosis or treatment." For a hearsay statement to fall under that exception, the statement must meet the following three-prong test: (1) the statement must be made for the purpose of medical diagnosis or treatment; (2) the statement must describe or relate medical history, past or present symptoms, or the cause or external source of the injury; and (3) the statement must be reasonably pertinent to diagnosis or treatment. *State v. Gonzales*, 292 Or App 274, 280, 423 P3d 149 (2018).

In father's first assignment of error, he argues that the trial court erroneously admitted hearsay testimony by G through her therapist and hearsay in G's therapy records. Put briefly, the state offered evidence that father physically abused G. As father points out, that evidence came from discussions G had with a therapist. Father argues that, without the hearsay statements made by G to her therapist, DHS cannot prove that father was unfit or that terminating his parental rights to G was in her best interest. Father contends that DHS failed to prove that G's statements to

her therapist fell within the "medical diagnosis" exception under OEC 803(4) because the record is insufficient to show that G was "motivated" to make her statements to the therapist for the purpose of medical diagnosis or treatment.[1]

The declarant's motivation is "determined on a case-by-case basis by reference to the circumstances under which those statements were made." *Dept. of Human Services v. J. G.*, 258 Or App 118, 123-24, 308 P3d 296 (2013). We will affirm the trial court's ruling "if there is evidence in the record from which the court could have found by a preponderance of the evidence that a child's statements were made for the purposes of medical diagnosis or treatment." *Id.* at 124. In making that determination, we consider factors such as location, connection with physical examination, and use of information gathering. *Id.* In the case of small children, circumstantial evidence may provide sufficient evidence to infer that the child "understood she was undergoing a medical examination * * * [when considering the child's] answers to the doctor's specific questions." *Gonzales*, 292 Or App at 282 (citing *State v. Booth*, 124 Or App 282, 287, 862 P2d 518 (1993), *rev den*, 319 Or 81, *cert den*, 513 US 953 (1994)).

Here, G visited Clackamas County Sandy Behavioral Health Center for a psychiatric diagnostic evaluation and intake for therapy where a child and family therapist conducted the evaluation. G was experiencing nightmares, anxiety, having trouble with transitions, and was "shutting down." The intent behind G's treatment was to "increase adjustment to trauma; decrease shut down/avoidance." As part of that process, the therapist testified that she explained to G, in a child appropriate manner, what the therapist's role was and how she was going to help G with her issues. Specifically, the therapist testified that she told G:

> "I'm here to help. My job is to understand what's happening and why you're having these dreams and why you are having a hard time talking about what's happening. I'm here to help you talk about those things, and play about those things, and draw about those things so that they don't feel so crummy in your body. And so it's important that you

---

[1] Because the parties do not dispute the issue, we assume, without deciding, that the therapist here was a provider to whom qualifying statements could be made.

feel safe here and you feel valued here. And we're going to take our time, and I'll help you get there. But I just want you to make sure that you understand I'm here as a—as a helper and you're never in trouble with me."

The therapist also testified that, based on her experience and conversations with G, G understood the therapist's role. Further, the therapist testified that, for over the year and a half that the therapist had been working with her, G demonstrated that she understood the therapist's role by engaging with the "trauma-focused cognitive behavioral therapy" model used by the therapist for treatment.

Thus, taken together, the record supports a finding that G made her statements to her therapist for the purpose of medical diagnosis or treatment; therefore, the statements were properly admitted under OEC 803(4). *See also State v. Mayer,* 146 Or App 86, 92-93, 932 P2d 570 (1997) (determining that the trial court could conclude that a child understood his CARES interview "to be an extension of the medical examination * * * and therefore that its purpose was to obtain medical diagnosis or treatment" where the interview took place in a medical setting and the child knew that the interviewer "worked with doctors"); *J. G.*, 258 Or App at 126 (evidence sufficed for trial court to find that statements were made for purpose of medical diagnosis or treatment where child was taken to CARES facility at a medical center and was examined by a physician who explained that the examination and interview was done for purposes of medical diagnosis and treatment). Accordingly, the trial court did not err in admitting G's statements into evidence.

In his remaining assignments of error, father contends that the juvenile court erred in ruling that father was unfit to parent G under ORS 419B.504, erred in ruling that father neglected G under ORS 419B.506, erred in ruling that terminating father's parental rights served G's best interests under ORS 419B.500, and erred in terminating father's parental rights to G.

We review *de novo* a juvenile court's judgment terminating parental rights. ORS 19.415(3)(a); *J. W. V. v. J. L. W.*, 324 Or App 393, 395, 525 P3d 1237 (2023) (holding that under ORS 19.415(3), we conduct *de novo* review

of termination of parental rights). Under that standard, we conclude that there was sufficient evidence on the record[2] demonstrating that the trial court's TPR judgment was in G's best interest. From the time of G's second removal in May 2021 until November 2, 2022, father visited G only once. Father argues that he had "reasonable cause" not to visit because he distrusted DHS and had a negative relationship with the department. But that is not a reasonable cause for father's failure to respond to DHS' attempts to arrange for visitation, regularly visit his child for nearly 18 months, and not visit at all in the six months prior to the filing of the termination petition.

Further, father testified at trial that he was not ready to parent G. Although G has a bond with father, that bond is insecure. By father's own choice, he missed a large part of G's young life, and since visits began with father, G's therapy has regressed. The record shows that G is strongly bonded with her resource family; her resource mother is a relative, and she is willing to facilitate a relationship between G and father.

Affirmed.

---

[2] As noted, our review is *de novo* under ORS 19.415 (3)(a). We must "examine the record with fresh eyes to determine whether the evidence developed below persuades us that termination is in [the child's] best interest." *Dept. of Human Services v. T. L. M. H.*, 294 Or App 749, 750, 432 P3d 1186 (2018). We must determine whether there is clear and convincing evidence that father's parental rights should be terminated. *Id.*; ORS 419B.521(1). That requires us to be persuaded by the evidence that it is highly probable that termination of father's rights is in G's best interest. *T. M. L. H.*, 294 Or App at 750. To conclude that termination of parental rights is in a child's best interest, "we must be able to determine with confidence that the benefits to the child of ending the child's legal relationship with a parent outweigh the risk of harm posed to the child by severing that legal relationship." *Dept. of Human Services v. L. M. B.*, 321 Or App 50, 53, 515 P3d 927 (2022). In making that determination, we consider (1) the strength of the bond between the parent and child; (2) whether severing that bond will help or harm the child; (3) the benefits to the child of terminating parental rights; and (4) the risk of harm posed by the same. *Id.* Each termination case poses unique circumstances such that no legal test is all-encompassing, but our focus is on the needs and unique circumstances of the child. Although the best-interest inquiry focuses on the child's needs, "[f]acts that demonstrate the parent's unfitness also may demonstrate that it is in the child's best interest" to terminate parental rights. *Dept. of Human Services v. T. M. D.*, 365 Or 143, 162, 442 P3d 1100 (2019).