No. 191　　　　　March 5, 2025　　　　　479

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RAMON AMADOR-HERNANDEZ,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR56998, 19CR57003; A177568 (Control), A177569

Jerry B. Hodson, Judge.

Argued and submitted January 22, 2024.

Shawn Wiley, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Powers, Presiding Judge, Hellman, Judge, and Armstrong, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

This is a consolidated criminal appeal in which defendant appeals a judgment convicting him of two counts of first-degree criminal mistreatment, ORS 163.205, and a second judgment convicting him of five counts of first-degree sexual abuse, ORS 163.427. As to the first judgment, he challenges the sufficiency of the evidence and assigns error to the court's denial of his motion for judgment of acquittal. As to the second judgment, defendant argues that the court erred in admitting hearsay statements in the form of a videotaped CARES interview. For the reasons explained below, we affirm.

*First-Degree Criminal Mistreatment, 19CR57003*

The state charged defendant with first-degree criminal mistreatment of each of his two daughters, G and T. Following the state's presentation of evidence, defendant moved for judgment of acquittal on both counts. The trial court denied the motion and found defendant guilty of both counts, explaining that the state presented evidence sufficient to conclude that defendant "knowingly withheld necessary and adequate food and dental care from [G] and [T] and that these conditions caused or were likely to cause serious physical injury."

On appeal, defendant contends that the evidence related to the children's dental problems and the family's food insecurity was insufficient for a conviction under ORS 163.205. The evidence of G's and T's tooth decay, he argues, is similar to that of *Drown*, where we held that evidence of the defendant's failure to treat her children's dental problems was insufficient to prove that the defendant withheld care for a condition that could cause serious physical pain or injury. *See State v. Drown*, 245 Or App 447, 464-65, 263 P3d 1057, *rev den*, 351 Or 401 (2011) (holding that, for purposes of ORS 163.205, the standard of withholding necessary and adequate physical care "can be satisfied by withholding care for a condition that causes or will cause serious physical pain or injury"). Defendant also contends that the state failed to prove that defendant had the requisite mental state of intentionally or knowingly withholding care.[1]

---

[1] Because the indictment said that he "intentionally *and* knowingly" withheld care, defendant argues that the state was required to prove both mental states. We reject that argument. *See State v. Stevens Equipment Co.*, 165 Or App

A judgment of acquittal is appropriate if the evidence is insufficient to support a verdict. *State v. Cunningham*, 320 Or 47, 61-62, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995); *State v. Newkirk*, 319 Or App 131, 133, 509 P3d 757, *rev den*, 370 Or 214 (2022). We review questions of the sufficiency of the evidence in a criminal case following a conviction by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *Cunningham*, 320 Or at 63. Reviewing under that standard, we conclude that sufficient evidence existed to support the court's verdict.

In particular, we find persuasive the testimony of the CARES physician, Bishop-Perdue, and the school counselor, Nash-Sedda. Bishop-Perdue examined G and T after DHS took custody and testified that they were "underweight and undersized for their age." They both had "bitemporal wasting, which means that the muscles along the side of their face were much smaller than they should be." G had "significant cavities where her teeth were rotten right to the gum line" which "[made] eating difficult" and had the potential to cause "whole body infections due to abscesses or infections of [her] teeth." The condition of G's teeth was the result of "dental neglect" and contributed to "not being able to take in enough nutrition," which Bishop-Perdue considered "also to be a form of neglect, the nutritional neglect."

T also had "significant dental decay" and was below the first percentile for her height and weight despite previous records showing her near the 30thpercentile. The chronic malnutrition that Bishop-Perdue observed would have taken years to occur. Based on "the physical findings of malnutrition with [T] and [G]," Bishop-Perdue concluded that the evidence was "consistent with a diagnosis of emotional abuse, neglect and exposure to high-risk environment." Out of thousands of children that Bishop-Perdue had evaluated while at CARES, she estimated that less than 20 had been as malnourished as G and T.

---

673, 686, 998 P2d 1278, *rev den*, 330 Or 553 (2000) (concluding that "the state's use of the conjunctive in its indictment *** did not mean that it was required to prove in the conjunctive").

Nash-Sedda, the school counselor, testified that G and T had "matted hair" and "reeked of urine." G and T told her that "they weren't being fed at home" and one of them had a "really bad tooth problem" that was "impacting her ability to eat at school." In 21 years of working at the school, G and T "are in the top ten kids" that Nash-Sedda has ever been concerned about.

As to evidence of defendant's requisite mental state of knowingly withholding care, G's and T's older sister, JC, testified that there "wasn't much food in the house" and that G and T complained to defendant about being hungry "[a] lot." Nash-Sedda testified that she spoke to defendant about "all [her] concerns" regarding G and T, and defendant expressed that he "wanted to do better." Bishop-Perdue testified that a nonmedically trained person would have noticed G's teeth problems and lack of growth.

We take seriously defendant's argument that the indictment and conviction in this case does nothing more than criminalize poverty. It is a tragic reality that many Oregon families struggle to afford housing, food, and medical and dental care for their children. However, based on the record, which includes evidence of the availability of food and dental care for the children, this is not a case of a parent who was simply unable to afford basic necessities.. Instead, the record contains sufficient evidence to support the trial court's determination that defendant "knowingly withheld necessary and adequate food and dental care from [G] and [T]" and that those conditions "caused or were likely to cause serious physical injury."[2]

### First-Degree Sexual Abuse, 19CR56998

In a separate case, the state charged defendant with five counts of sexual abuse in the first degree, ORS 163.427, against his stepdaughter, AC. Prior to trial, defendant sought to exclude video evidence of AC's CARES interview, arguing that AC's statements on the video constituted inadmissible

---

[2] We emphasize that this case has significant distinctions from *Drown*, where there was no evidence as to which children had toothaches, the severity of the aches, or any evidence that "the children were experiencing symptoms that interfered with their daily activities or were likely to result in serious harm in the long term." 245 Or App at 464-65.

hearsay evidence. The court determined that the video was admissible as an exception to the hearsay rule under OEC 803(4) (statements made for purposes of medical diagnosis or treatment).[3] A jury convicted defendant on all five counts.

Defendant contends that the court erred by admitting the video. He argues that AC's testimony at trial made clear that she did not believe that the purpose of her visit to CARES was for medical services. Instead, defendant argues that the purpose of the CARES visit was for investigatory purposes and thus the videoed statements were not admissible under OEC 803(4).

A trial court's determination as to whether a statement satisfies the requirements of OEC 803(4) is a question of fact that must be decided on a case-by-case basis. *Dept. of Human Services v. J. G.*, 258 Or App 118, 123-24, 308 P3d 296 (2013). "We will affirm the trial court's ruling if there is evidence in the record from which the court could have found by a preponderance of the evidence that a [declarant's] statements were made for the purposes of medical diagnosis or treatment." *Id*. at 124. Reviewing the record in accordance with that standard, we conclude that the trial court did not err by admitting the statements.

After making allegations of sexual abuse, AC was referred to CARES where she was evaluated by Bishop-Perdue and asked questions by an interviewer. Bishop-Perdue testified that she first reviewed medical authorization forms with AC and then explained that the purpose of her visit was to evaluate if there was "any kind of abuse or neglect or any further medical treatment" that AC may need. Bishop-Perdue conducted a "head-to-toe complete exam" of AC. CARES is a "medical clinic," and the physical examination and interview component both took place at that location. After the physical examination, the CARES interviewer told AC that "this is the second part of your checkup" and explained that "the doctor" would be watching from behind a one-way mirror or from her office.

---

[3] OEC 803(4) provides: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

At trial, the state called AC to testify and played portions of her CARES interview during her testimony. When asked what her understanding was as to the purpose of the CARES evaluation, AC testified that it was "[j]ust to listen to what I had to say (indiscernible) it and I'm not sure why they looked because most of my experiences, it never got to that extent. But I just looked at it as a physical, just making sure everything looked okay."

AC's testimony, viewed in context with the testimony from Bishop-Perdue, provides sufficient evidence for the court to have found by a preponderance of the evidence that AC's statements were made for purposes of medical diagnosis or treatment. *See J. G.*, 258 Or App at 124 (explaining the factors to be considered in determining whether statements were made for purposes of medical diagnosis or treatment to include "facts like location" and "connection with a physical examination").

Defendant places great weight on the fact that AC questioned whether the physical examination was necessary based on the nature of her specific abuse allegations and argues that that question demonstrates that AC did not view her statements as being made for the purpose of medical treatment or diagnosis. We are not persuaded by that argument. In the context of a medical evaluation, people routinely ask questions about the need for particular tests or procedures; that does not mean that they believe that their statements are not for a medical treatment or diagnosis. Even if AC had some questions about the necessity of the physical examination part of the evaluation (or "checkup" as the interviewer put it), that does not persuade us that AC did not understand her statements to be for the purpose of medical diagnosis or treatment. To the contrary, the record here suggests that AC believed that her statements were for a medical purpose. *See State v. Logan*, 105 Or App 556, 562, 806 P2d 137, *rev dismissed*, 312 Or 16 (1991) (evaluating whether the declarant understood that her answers to the interviewer's questions were for the purposes of medical diagnosis or treatment in determining whether they were admissible under OEC 803(4));*ontra State v. Gonzales*, 292 Or App 274, 281-82, 423 P3d 149 (2018) (concluding that

statements were not for purposes of medical diagnosis or treatment where the declarant "unequivocally expressed her belief that the CARES interview was part of the criminal investigation" and stated her belief that the purpose of the interviewer's questions was to get her to "change [her] story"). Accordingly, the trial court could conclude that the challenged statements were motivated by a desire for medical diagnosis or treatment and did not err in admitting the statements.

Affirmed.